J-A15010-17

2017 PA Super 252

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellee<br><br>v.<br><br>JUSTIN MITCHELL HAINES<br><br>Appellant | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br><br>No. 1760 MDA 2016 |

Appeal from the Order Entered October 17, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005514-2015

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

OPINION BY MOULTON, J.:                    **FILED AUGUST 02, 2017**

The Commonwealth appeals from the October 17, 2016 order entered in the York County Court of Common Pleas granting the motion to suppress filed by Justin Mitchell Haines.[1]  Because the trial court did not make factual findings regarding whether Haines consented to the blood draw before or after being improperly warned about the consequences of refusal, we are

_____

[1] In its notice of appeal, the Commonwealth certified that the trial court's order granting Haines' motion to suppress terminates or substantially handicaps the prosecution.  **See** Pa.R.A.P. 311(d) (permitting interlocutory appeal where Commonwealth certifies with its notice of appeal that order terminates or substantially handicaps prosecution).  Thus, the appeal is properly before us.  **See Commonwealth v. Ivy**, 146 A.3d 241, 244 n.2 (Pa.Super. 2016).

unable to determine whether the court erred in finding Haines' consent was involuntary. We therefore reverse and remand with instructions.

The trial court set forth the following factual history:

> [Haines] is charged with the following offenses; (1) Murder of the Third Degree, 18 Pa.C.S.A. § 2502(c); (2) Aggravated Assault, 18 Pa.C.S.A. § 2702(a)(1); (3) Homicide by Vehicle While Under the Influence of Alcohol or Controlled Substance, 75 Pa.C.S.A. § 3735; (4) Aggravated Assault by Vehicle While Under the Influence of Alcohol or Controlled Substance, 74 Pa.C.S.A. § 3735.1; (5) Homicide by Vehicle, 75 Pa.C.S.A. § 3732; (6) Aggravated Assault by Vehicle, 75 Pa.C.S.A. § 3732. 1; (7) two counts of DUI, 75 Pa.C.S.A. § 3802(a)(1), (c); (8) Reckless Driving, 75 Pa.C.S.A. § 3736; (9) Careless Driving, 75 Pa.C.S.A. § 3714(a); (10) Careless Driving- Unintentional Death, 75 Pa.C.S.A. § 3714(b); (11) Careless Driving- Serious Bodily Injury, 75 Pa.C.S.A. 3714(c); and (12) Driving Vehicle at Safe Speed, 75 Pa.C.S.A. § 3361.
>
> The incident that gave rise to these charges occurred in the early evening hours of February 8, 2015, in New Cumberland, York County, Pennsylvania at the intersection of Lewisberry and Poplar Road. According to the Commonwealth's testimony, this incident occurred as [Haines] was traveling west on Lewisberry Road in his black Honda Pilot. The victims, Kyle Richard Quigley and his wife, Amy L. Marburger, were entering Lewisberry Road from Poplar Road in Mr. Quigley's White Honda Civic, when they were hit by [Haines'] vehicle. Mr. Quigley, who was driving at the time of the incident, was ejected from his vehicle and later pronounced dead. Ms. Marburger sustained severe injuries, including, but not limited to, a brain injury, a shoulder injury, and internal injuries. Immediately following the incident, she was transported to Hershey Medical Center for treatment.

When [Sergeant] Timothy Dehoff and Sergeant Holland[2] arrived on scene, they began the investigation of their reports. It was concluded that there were no adverse weather conditions and the roadway was dry at the time of the crash. Further, [Haines] did not have any visual obstructions as he was traveling west on Lewisberry Road approaching Poplar Road.

[Sergeant] Dehoff spoke with [Haines] on the scene after he was placed in the ambulance. [Haines] advised [Sergeant] Dehoff he was heading home at the time of the incident after picking up food for his family. At that time, the officer smelled a strong o[]der of alcohol coming from [Haines'] breath and when asked [Haines] stated he had consumed one beer earlier that day.

[Haines] was transported to Harrisburg Hospital for medical observation. [Sergeant] Dehoff drove to the hospital to determine if personnel were going to perform a medical blood draw on [Haines]. Medical personnel informed [Sergeant] Dehoff that the hospital was not going to draw blood due to the lack of [Haines'] significant injury. At that time, [Sergeant] Dehoff requested [Haines] to submit to a blood chemical test to determine his blood alcohol concentration ("BAC") based on the smell of intoxicants emanating from [Haines'] breath. After being verbally advised of the warnings set forth on Penn-DOT's "DL-26" form [Haines] submitted to the test. The blood sample was sent to Quest Diagnostics for testing. [Haines] BAC was measured at 0.250%. As a result of these facts, the aforementioned charges were filed.

Opinion in Support of Order Granting Defendant's Motion to Suppress Evidence of Blood Results, 10/17/16, at 1-4 ("Suppression Op.").

Haines filed a motion to suppress the blood test results. On August 24, 2016, the trial court held a hearing on the motion. On October 17,

---

[2] Sergeant Holland's first name is not in the certified record on appeal.

2016, the trial court granted Haines' motion and suppressed the evidence. The Commonwealth filed a timely notice of appeal.

The Commonwealth raises the following issues on appeal:

1. The trial court erred in granting [Haines'] motion to suppress his blood alcohol results as [Haines] voluntarily consented to having his blood drawn for purposes of blood alcohol toxicological testing.

   a. The trial court failed to consider the uncontested facts of record and controlling case law regarding the voluntary consent exception to the search warrant requirement, which allows for a warrantless blood draw where a defendant voluntarily consents to a blood draw.

   b. The trial court misapplied **Birchfield v. North Dakota**, [136 S.Ct. 2160] (2016) by performing an inapplicable exigent circumstances analysis rather than considering the voluntary consent exception to the search warrant requirement.

2. The trial court erred in granting [Haines'] motion to suppress his blood alcohol results, as [Haines'] blood draw is admissible pursuant to 75 Pa.C.S. § 3755.

   a. The trial court erred in determining that 75 Pa.C.S. § 3755 was inapplicable despite [Haines] being transported by EMS to Harrisburg Hospital emergency room for medical treatment following a fatal vehicle crash, and where police officers possessed probable cause to believe that [Haines] committed a violation of 75 Pa.C.S. §3802 and communicated said probable cause to hospital personnel.

   b. The trial court erred in determining that 75 Pa.C.S. § 3755 was inapplicable based upon medical personnel's failure to comply with the mandates of §3755, which required medical personnel to promptly take a blood sample from [Haines] based upon probable cause for violating 75 Pa.C.S. §3802, as medical personnel's failure to comply with the

- 4 -

> mandatory dictates of §3755 did not negate the admissibility of [Haines'] blood draw and blood alcohol results.

Cmwlth's Br. at 4-5.

When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and "whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Brown*, 64 A.3d 1101, 1104 (Pa.Super. 2013) (quoting *Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa.Super. 2010)). We may only consider evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085-87 (Pa. 2013). In addition, because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence "as remains uncontradicted when read in the context of the record as a whole." *Brown*, 64 A.3d at 1104 (quoting *Cauley,* 10 A.3d at 325). We may reverse only if the legal conclusions drawn from the facts are in error. *Id.*

The United States Supreme Court has held that because "the taking of a blood sample" is a search within the meaning of the Fourth Amendment to the United States Constitution, police officers may not compel the taking of a blood sample without a search warrant, absent an applicable exception. *Birchfield*, 136 S.Ct. at 2173, 2185.[3] After concluding that "the search

---

[3] In contrast, the Supreme Court also held that police officers may administer a breath test without a warrant as a search incident to arrest. *Birchfield*, 136 S.Ct. at 2185.

incident to arrest doctrine does not justify the warrantless taking of a blood sample," *id.* at 2185, the *Birchfield* Court considered whether implied-consent laws, which require cooperation with blood-alcohol testing as "a condition of the privilege of driving on state roads," could provide an exception to the warrant requirement consistent with the federal constitution. *Id.* at 2169, 2185-86. The Court held that, although implied-consent laws that impose civil penalties and evidentiary consequences for refusing to consent are constitutional,[4] implied-consent laws that "impose criminal penalties" for refusing to consent to a blood test are unconstitutional because "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2185-86.

_____

[4] The Court in *Birchfield* stated:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. *See, e.g.,* [*Missouri v.*] *McNeely,* []133 S.Ct. [1552,] 1565–1566 [(2013)] (plurality opinion); [*South Dakota v. Neville*, 459 U.S. 553, 560, (1983)]. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

136 S.Ct. at 2185.

In **Commonwealth v. Evans**, this Court reviewed Pennsylvania's implied-consent law[5] and found that "the law undoubtedly 'impose[s] criminal penalties on the refusal to submit to'" a blood test. 153 A.3d 323, 331 (Pa.Super. 2016) (quoting **Birchfield**, 136 S.Ct. at 2185-86). In **Evans**, a police officer told the defendant that:

> It is my duty as a police officer to inform you that if you refuse to submit to a chemical test, your operating privilege will be suspended for at least 12 months and up to 18 months. If you have prior refusals or have been previously sentenced to driving under the influence, in addition, **if you refuse to submit to chemical test and you are convicted or plead to violating § 3802(a)(1)[,] related to impaired driving under the vehicle code, because of your refusal, you will be subject to more severe penalties set forth in § 3804(c)[,]** relating to penalties, the same as if you were—if you would be convicted at the highest rate of alcohol, which can include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000, to a maximum of [five] years in jail and a maximum fine of $10,000.

**Id.** at 325 (emphasis added).[6] This Court vacated the judgment of sentence and remanded to the trial court to "reevaluate [Appellant's] consent . . . [, based on] the totality of all the circumstances." **Id.** at 331 (quoting

---

[5] Pennsylvania's implied-consent law states that a person's license may be suspended if a person refuses a requested blood test, 75 Pa.C.S § 1547(b), and that a person faces increased criminal penalties if he or she refuses a blood test and is later convicted of DUI (general impairment), **see id.** § 1547(b)(2)(ii); **id.** § 3804(c) (providing sentencing ranges for "[a]n individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d)").

[6] This is the same warning contained on the DL-26 form read to and signed by Haines.

*Birchfield*, 136 S.Ct. at 2185-86) (alterations in original). We reasoned that the implied-consent warnings given to the defendant were "partially inaccurate" because they referenced enhanced criminal penalties that could not be constitutionally imposed, arguably vitiating the defendant's consent. *Id.*

Our Supreme Court has applied the following standard to determine whether an individual has validly consented to a chemical test:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice — not the result of duress or coercion, express or implied, or a will overborne — under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. 2013) (internal citations and quotation marks omitted).

## I. The Timing of Haines' Consent

The Commonwealth first argues that Haines' consent was voluntary and unaffected by the decision in *Birchfield*. Specifically, it makes the factual claim that Haines consented to the blood draw prior to being read the

DL-26 form, which contained the warning that he would face enhanced penalties if he refused consent and later was convicted of DUI general impairment. As a result, the argument continues, Haines' consent could not have been tainted by the later-delivered, "partially inaccurate" DL-26 warning, thus rendering his consent valid and the results of the blood draw admissible.

We agree that **if** Haines validly consented **before** being informed that he faced enhanced criminal penalties for failure to do so, then his consent would not be tainted by the warning and the blood test results would be admissible. ***See Birchfield***, 136 S.Ct. at 2185-86. If, however, he did not consent until after Sergeant Dehoff informed him that he would face enhanced criminal penalties if he refused to consent, then the trial court did not necessarily err in granting his motion to suppress the test results. ***Id.***

Here, the trial court's opinion does not address this important temporal distinction, instead simply stating that "[a]fter being verbally advised of the warnings set forth on Penn-DOT's 'DL-26' form [Haines] **submitted to the test**." Suppression Op. at 3-4 (emphasis added). The trial court concluded that "the Commonwealth failed to present evidence that the impermissible enhanced criminal penalty that would have applied if [Haines] failed to submit to the blood test, was in fact not the factor that caused [Haines] to consent to the blood test." ***Id.*** at 8. This conclusion, however, did not account for Sergeant Dehoff's testimony at the suppression hearing, relied on by the Commonwealth. Sergeant Dehoff testified as follows:

A. . . . . I explained to him that I was going to ask him to submit to a blood test to determine his blood alcohol level. He said he understood.

I then read to him the DL-26 (3-12) version, chemical test warnings. I read that to him aloud and requested that he sign it that he had in fact been read those, and he did do that.

Q. Now, before we go into the DL-26 form at that time, when you were speaking to [Haines] about that you were going to request a blood alcohol test and request a blood draw to perform such test, had you placed [Haines] under arrest at that point?

A. No.

Q. When you mentioned to him that you were going to make such a request, what was the -- did [Haines] agree to have his blood drawn at that point?

A. He did.

Q. And was that prior to you reading the DL-26 form?

A. That's correct.

Q. Now, you said then, after he had agreed, you then read the DL-26 form ; is that correct?

A. Correct.

[Assistant District Attorney ("ADA")]: May I approach, Your Honor?

THE COURT: You may.

BY [ADA]:

Q. Officer, I want to show you the DL-26 form.

This is Commonwealth's Exhibit 3. I ask if you would review that and if you recognize what this exhibit is.

A. This would be the DL - this is a copy of the DL-26 that I would have read to Mr. Haines indicating that I was requesting a chemical test of blood, my signature that I read it to him, and his signature that it had been read to him.

- 10 -

Q. And did you actually see Mr. Haines sign this form?

A. I did. He used my pen and my clipboard.

Q. And you saw him date this form; is that correct?

A. Correct.

Q. Now concerning this particular DL-26 form as part of this form, do you see a Number 3 listed under, "It is my duty as a police officer to inform you of the following"? Do you see that?

A. Number 3?

Q. Yes.

A. Yes.

Q. Concerning Point Number 3, do you see any discussion there regarding enhanced criminal penalties if [Haines] were to refuse?

A. Yes.

Q. And did you in fact also read that paragraph as it was on the form to [Haines]?

A. Verbatim.

Q. Now, in reading this particular form verbatim to [Haines], following that, he did sign it, correct?

A. Correct.

Q. And following the signature and execution of the DL-26 form, was any blood drawn from [Haines]?

A. It was.

. . .

Q. And at that point, did [Haines] agree, prior to the reading of the DL-26 form, to having his blood drawn?

A. He did.

N.T., 8/24/16, at 19-23. Sergeant Dehoff further testified on cross examination that:

> A. I basically told Mr. Haines, "Because the nature of the crash, there were severe injuries," he asked me if Mr. Quigley was deceased. I said, "I can't tell you that. I don't know." I said, "But because of what has occurred here today, you admitted to drinking, I can smell it on you, I'm going to ask you to take a blood test to determine how much alcohol is in your blood." He said, "Okay."
>
> Q. You then read him the DL-26 form?
>
> A. Yes.
>
> Q. After you read him the DL-26 form, you requested him to submit to a blood test?
>
> A. That's correct.
>
> Q. He then agreed after hearing that form, correct?
>
> A. That's correct.
>
> Q. You never informed him prior to the first consent that he would go to jail, correct?
>
> A. No.
>
> Q. You never told him he had the right to refuse before that?
>
> A. Refuse the test?
>
> Q. To submit to a test before that?
>
> A. No, I didn't tell him that.
>
> Q. You never told him he was under arrest before that?
>
> A. That's correct.
>
> Q. So to cover your bases, you read him the form, and then you asked him to submit to a blood test?
>
> A. That is correct.
>
> Q. And at that point he agreed to submit to a blood test?

A. He did again.

*Id.* at 27-28

This testimony would support a finding that Haines consented before the DL-26 warnings or a finding that he consented after the warnings. Because the trial court did not make a factual finding addressing that issue, we must remand for a determination as to whether, under the totality of the circumstances, including the issue of timing, Haines' consent to the blood draw was valid. *See Evans*, 153 A.3d at 331.

## II. Authorization under 75 Pa.C.S. § 3755

In the alternative, the Commonwealth contends that "the trial court erred in granting [Haines'] suppression motion because [Haines] did not have a right to refuse a blood draw pursuant to 75 Pa.C.S. § 3755." Cmwlth's Br. at 20.

The Vehicle Code provides:

> **General rule.--**If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person

> tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S. § 3755(a).

The Commonwealth argues that the requirements of section 3755 were all met – Haines, as a result of a motor vehicle accident, required emergency room treatment and Sergeant Dehoff had probable cause to believe Haines had been driving under the influence of alcohol. Accordingly, relying in part on our recent decision in **Commonwealth v. March**, 154 A.3d 803 (Pa.Super. 2016), it contends that medical personnel at the hospital should not have refused Sergeant Dehoff's request that they take a blood sample from Haines and submit the sample for testing.

While we do not necessarily disagree with the Commonwealth's reading of section 3755, the fact remains that hospital personnel, for whatever reason, declined to draw Haines' blood pursuant to that provision.[7] That they might or even should have done so does not provide an independent basis for denying Haines' motion to suppress. Accordingly, the

---

[7] The question whether they could or should have done so, as a matter of statutory or constitutional law, is not properly before us. Accordingly, we need not address the question whether, in light of **Birchfield**, the implied consent envisioned by the combination of sections 1547 and 3755 provides an independent, constitutionally valid exception to the warrant requirement. **Cf. Commonwealth v. Myers**, ---A.3d.---, 2017 WL 3045867, at *8-*13 (Pa. July 19, 2017).(opinion for three justices concluding that implied consent scheme, without more, is insufficient to establish the voluntariness of consent necessary to serve as exception to the warrant requirement).

admissibility of the test results turns wholly on the validity of Haines'
consent.

Order vacated. Case remanded, with instructions. Jurisdiction
relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2017