J-S52013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RANDY D. WRIGHT, | : | |
| | : | |
| Appellant | : | No. 149 MDA 2017 |

Appeal from the Judgment of Sentence January 9, 2017
in the Court of Common Pleas of Adams County,
Criminal Division, No(s):  CP-01-CR-0001302-2015

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED AUGUST 31, 2017**

Randy D. Wright ("Wright") appeals from the judgment of sentence entered following his conviction of three counts of driving under the influence ("DUI"),[1] one count of accident involving damage to attended vehicle or property; and the summary offenses of failure to stop and give information or render aid, traffic control signals, driving without a license, passing zones, and reckless driving.[2]  We affirm.

As found by the suppression court, during his 7:00 a.m. to 5:00 p.m. shift on November 25, 2015, Cumberland Township Police Sergeant Matthew Trostle ("Sergeant Trostle") responded to a report of a "hit and run" accident involving multiple vehicles.  At the scene, Sergeant Trostle was informed

---

[1] Specifically, Wright was convicted of DUI-controlled substances, DUI-controlled substance (metabolites), and DUI-controlled substance (impaired ability).  **See** 75 Pa.C.S.A. § 3802(d)(1)(i), (iii), (2).

[2] 75 Pa.C.S.A. §§ 3743(a), 3744(a), 3112(a)(3)(i), 3307(b), 3736.

that a black SUV, with damage matching the description of the vehicle involved in the accident, had pulled into the parking lot of the Aspire Motel. Sergeant Trostle proceeded to the motel, where he found Wright in the motel lobby. Sergeant Trostle ordered Wright to put his hands up and get down on the ground. Wright complied, at which time Sergeant Trostle placed Wright under arrest.

Sergeant Trostle immediately informed Wright of his **Miranda**[3] rights. During a search incident to arrest, Sergeant Trostle found a large amount of cash in Wright's possession. Other officers arrived at the scene, at which time Wright told the officers that his vehicle hit the other vehicles because they were chasing him. The officers asked Wright to submit to field sobriety tests. Wright responded that he could not physically perform the tests because of injuries to his knees and feet. However, Wright also told the officers that he had a cup of urine in his vehicle, in case the officers needed to test it. Wright additionally asked officers to take him to the hospital for a blood test. "At no time was the Implied Consent Law discussed with or read to [Wright]." Suppression Court Opinion, 9/9/16, at 3. Subsequently, Wright's blood tested positive for controlled substances.

Prior to trial, Wright filed a Motion to Suppress the results of his blood test. In his Motion, Wright asserted that he was coerced into submitting to the blood test under the threat of enhanced penalties, in violation of the

---

[3] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

United States Supreme Court's decision in ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). ***See*** Motion to Suppress, ¶ 4. Wright also challenged the withdrawal of his blood without a search warrant. ***Id.***, ¶ 5. In his Memorandum of Law in support of his Motion, Wright argued that "a lack of information is no better than misinformation concerning an arrestee's rights when submitting to a search, and does not support a finding of knowing consent." Memorandum of Law in support of Motion to Suppress, at 18 (emphasis omitted). Wright argued that "failure to inform [the arrestee] of the right to refuse is a factor weighing against voluntary consent." ***Id.*** (emphasis omitted).

On September 9, 2016, the suppression court denied Wright's Motion. Following a bench trial, the trial court found Wright guilty of the above-described charges. The trial court subsequently sentenced Wright to an aggregate 60 months of intermediate punishment (with 12 months on restrictive sanctions and the remainder on restorative sanctions). Thereafter, Wright filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Wright presents the following claim for our review:

Did the [suppression] court err in finding knowing, specific, and voluntary consent where the record plainly demonstrates that [Wright] was in custody, was neither "lucid" nor "rational" at the time of the supposed consent, and was never advised of the nature of the arrest, the purpose of the blood test, or the right to refuse the blood test?

Brief for Appellant at 4.

     In appeals from suppression orders,

> [a]n appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that an appellate court is not bound by the suppression court's conclusions of law.

*Commonwealth v. Caple*, 121 A.3d 511, 516-17 (Pa. Super. 2015)

(citations omitted).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this Court.

*Id.* (citation omitted). "In addition, we are aware that questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."

*Id.*

     Wright first claims that the suppression court improperly found that he had consented to the blood alcohol test, where the evidence showed that he was under arrest, not "lucid" or "rational," and where no information was provided to him about blood testing. Brief for Appellant at 9. Wright argues that, considering the totality of the circumstances, his custodial detention

invalidated his consent. *Id.* at 11. According to Wright, his "consent" was obtained while he was in custody, "involving at least three police officers questioning him[.]" *Id.* at 12. Wright contends that the coercive nature of his custodial detention militates against finding consent. *Id.*

Wright further contends that the trial court improperly ignored his "deranged mental state in its totality of the circumstances analysis." *Id.* at 13. Wright argues that, unlike cases in which the defendant had clear understanding of blood testing, the record in this case is silent as to his education, whether he was told of the reason for his arrest, and whether he was informed about the purpose of blood testing. *Id.* at 14. Wright takes issue with the officers' decision "not to take the (very simple) precautions of explaining the basis for the arrest, the purpose of the blood testing, the right to refuse, and the consequences of the testing or refusal, nor did they simply ask if he understood what was happening." *Id.* at 15. Wright directs our attention to evidence of his deranged state of mind. *Id.* at 15-16. Wright contends that the suppression court's failure to consider his mental state constituted "harmful error," as such evidence is necessary to considering the totality of the circumstances. *Id.* at 17.

Wright also argues that the failure to inform a driver of the right to refuse to consent to blood testing is a factor weighing against finding voluntary consent. *Id.* According to Wright, "[w]hen appellate courts have found voluntary consent by subjects not informed of their right to refuse,

they have only done so when the subject was under arrest." *Id.* at 18. Again, Wright directs our attention to the officers' failure to explain to Wright the reason for his arrest, the purpose of the blood test, his right to refuse the blood test, and the potentiality that the blood test results could be used against him. *Id.* at 20.

> The Fourth Amendment to the United States Constitution provides
>
> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV. "[T]he text of the Fourth Amendment does not specify when a search warrant must be obtained." **Kentucky v. King**, 563 U.S. 452, 459 (2011).

"No matter the substance suspected of affecting a particular DUI arrestee, **Birchfield** requires that a blood test be authorized either by a warrant (or case-specific exigency) or by individual consent not based on the pain of criminal consequences." **Commonwealth v. Ennels**, 2017 PA Super 217 (filed July 11, 2017), *11. Thus, the question before us is whether Wright's consent was voluntary, under the totality of the

circumstances.[4]

As our Pennsylvania Supreme Court has explained,

[i]n determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

**Commonwealth v. Smith**, 77 A.3d 562, 573 (Pa. 2013) (internal citations and quotation marks omitted).

In its Opinion, the suppression court addressed Wright's claim, in relevant part, as follows:

[Wright] appears to assert that a [d]efendant cannot provide knowing consent unless he is given the warnings contained in the DL 26 [F]orm.[5] However, based upon a plain

---

[4] Here, the police officers did not advise Wright of any increased or additional penalties for refusal to submit to a blood test, prior to Wright consenting to the test. Where a driver gives his consent to a blood test prior to being given the warning of increased criminal penalties for refusing his consent, **Birchfield** is not implicated, as his consent was not tainted by the warning. **Commonwealth v. Haines**, 2017 Pa. Super. LEXIS 585, *10, 2017 PA Super 252 (Pa. Super. 2017) (citing **Birchfield**, 136 S. Ct. at 2185-86).

[5] The DL 26 Form provides that if a person refuses to consent to a blood test, his or her license could be suspended for a least one year and the defendant could face more severe penalties because of the refusal.

reading of the statute, it does not appear [that] a police officer must read the DL 26 [F]orm to a person arrested for a DUI offense prior to asking the person to submit to a blood draw.[FN] 75 Pa.C.S.A. § 1547(b)(1) states [that] "[i]f any person placed under arrest for a violation of section 3802 *is requested to submit to chemical testing and refuses to do so*, the testing shall not be conducted…." (emphasis added). If the person consents in response to an officer's request for a blood draw, there is no need to provide an explanation of the consequences of a refusal.

---

[FN] [The trial court] has found no case law suggesting a contrary reading of the statute. A license suspension and the enhanced criminal penalties are only triggered when an individual refuses to submit to the blood test; therefore, a person must be given the warning before either of those penalties can be imposed. *See Commonwealth v. Xander*, 14 A.3d 174, 179 (Pa. Super. 2011); *Weems v. Commw., Dep't of Transp., Bureau of Driver Licensing*, 990 A.2d 1208, 1211-12 (Commw. Ct. 2010).

---

The implied consent law "does not require that a motorist's consent to a chemical test be informed, but does require that a motorist's refusal be informed." *Commonwealth v. McCoy*, 895 A.2d 18, 27 (Pa. Super. 2006) [(internal citation omitted)]. Therefore, in the current case, because [Wright] asked to give a blood sample and consented to the blood draw, the fact [that] he was never provided with the DL[F]26 Form will not invalidate his consent.

Considering the above factors under the totality of the circumstances, [the suppression] court finds that [Wright] did provide knowing and voluntary consent to the blood draw.

Suppression Court Opinion, 9/9/16, at 7-8 (footnote 6 added). We agree with the sound reasoning of the suppression court, as set forth above, and affirm on this basis with regard to Wright's claim. *See id.*

To the extent that Wright claims that his mental condition negated the voluntariness of his consent, we observe that he did not raise this claim

before the suppression court. In his Motion to Suppress, Wright claimed that "his consent was not without coercion. [Wright] was coerced into giving his blood under threat of enhanced criminal penalties." Motion to Suppress, ¶ 4. Wright cited *Birchfield* in support. *Id.* At the suppression hearing, his counsel argued that the coercive nature of Wright's arrest negated the voluntariness of his consent. N.T., 8/25/16, at 17. Counsel additionally argued that the officers had failed to make it clear to Wright the purpose of the blood test, and how it could be used against him. *Id.* at 18. Counsel cited no case law supporting a claim that the police must explain the ramifications of providing a blood sample, after a driver offers his consent. Our research likewise finds no case law supporting his claim.

Again, reviewing the totality of the circumstances, including the fact that Wright was provided his *Miranda* warnings prior to offering his consent, the record supports the suppression court's findings and legal conclusions. Accordingly, we affirm Wright's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017