NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN J. TERWILLIGER | : | |
| | : | |
| Appellant | : | No. 1123 WDA 2018 |

Appeal from the Judgment of Sentence Entered June 28, 2018
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000272-2017

BEFORE: BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: FILED JUNE 10, 2019

Appellant Steven J. Terwilliger appeals from the judgment of sentence imposed following his jury trial convictions for driving under the influence (DUI) general impairment and DUI highest rate of alcohol.[1] Appellant argues that the trial court should have suppressed all evidence relating to his blood test results, because the police did not obtain a warrant and Appellant did not provide valid consent for the blood draw. For the reasons that follow, we are constrained to vacate the judgment of sentence, reverse the order denying suppression, and remand for a new trial.

The trial court set forth the relevant facts of this appeal as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1), (c). We also note that Appellant had two prior DUI convictions within the past ten years. See Trial Ct. Op., 7/10/18, at 1 (unpaginated).

Officer Richard Obermeyer of the Bradford City Police Department testified . . . that on March 28, 2017, around 11:00 p.m., he was on routine patrol, traveling in a patrol vehicle, when he observed a golden color Jeep that had a passenger side headlight that was not operating. He then followed the vehicle until there was a safe place to pull it over. He activated his patrol vehicle lights and the vehicle pulled over. When he approached the vehicle he identified [Appellant] as the driver, with two passengers also in the vehicle. [Appellant] told Officer Obermeyer that he did not have his driver's license, he did not have insurance for the Jeep, the Jeep was not registered and it had a license plate on it that was for another vehicle. Officer Obermeyer, when he went back to his patrol vehicle and obtained additional information, discovered that [Appellant's] operating privileges had previously been suspended for a prior DUI related offense. While Officer Obermeyer was in his patrol vehicle obtaining information regarding [Appellant's] license status and the Jeep, Sergeant Hiel Bartlett of the Bradford City Police Department arrived at the scene. Sergeant Bartlett first spoke to Officer Obermeyer and then approached the Jeep.

When he approached the Jeep, Sergeant Bartlett told [Appellant] that, due to the numerous issues with the Jeep, it could not be operated on the highway and would have to be towed. Sergeant Bartlett then asked for some additional information regarding the Jeep and [Appellant], apparently to obtain some documents, opened the glove box. When [Appellant] opened the glove box door, Sergeant Bartlett observed two unopened cans of beer in the glove box. Sergeant Bartlett also detected an odor of alcohol coming from [Appellant], and [Appellant] had slurred speech. Sergeant Bartlett testified that [Appellant] had "delayed cognitive thought." [Sergeant Bartlett] then asked [Appellant] to exit his vehicle to perform field sobriety tests. [Appellant] exited the vehicle and provided a breath sample as part of a portable breath test. The first test that [Appellant] was asked to perform was the "nose touch test." During this test, [Appellant] failed to touch his nose and swayed. On the next test, the one leg stand, [Appellant] placed his foot down at 20 instead of 30 as instructed. [Appellant] was then placed under arrest for [DUI].

After placing him under arrest, Sergeant Bartlett asked [Appellant] if he was willing to go to the Bradford Regional Medical

- 2 -

Center to provide a sample of blood for blood alcohol testing.[2] [Appellant] responded "Yes." Body cam video was played at the hearing that verified that, after Sergeant Bartlett asked [Appellant] to go to [the hospital] to provide a sample, [Appellant] responded "Yep."[3] [Appellant] was not told that he would face additional penalties if he declined the test; he did not hesitate when indicating "Yep;" and he had no follow up questions for either Sergeant Bartlett or Officer Obermeyer about the test.

Officer Obermeyer transported [Appellant] to the Bradford Regional Medical Center . . . for the blood draw. It was approximately 35 to 40 minutes from the time that [Appellant] was stopped until [Appellant] and Officer Obermeyer arrived at [the hospital] for the blood draw.

Trial Ct. Op., 1/7/19, at 2-4 (record citations omitted). Subsequent testing revealed that Appellant's blood alcohol concentration was approximately 0.232%.

On June 21, 2017, the Commonwealth filed a criminal information, charging Appellant with multiple counts of DUI and various summary vehicle offenses. On October 5, 2017, Appellant filed a suppression motion. Citing

_____

[2] At the time of Appellant's arrest, 75 Pa.C.S. § 3804 provided enhanced penalties for an individual convicted of DUI who refused blood testing. "On July 20, 2017, [the governor] signed into law Act 30 of 2017 which amended [Section] 3804 . . . . Specifically, Act 30 provides for enhanced criminal penalties for individuals who refuse to submit to blood tests only when police have obtained a search warrant for the suspect's blood." Commonwealth v. Robertson, 186 A.3d 440, 445 (Pa. Super. 2018) (citation omitted), appeal denied, 195 A.3d 852 (Pa. 2018).

[3] Although the Commonwealth entered Sergeant Bartlett's body camera video into evidence at the suppression hearing, the video was not included in the certified record on appeal.

Birchfield v. North Dakota, 136 S. Ct. 2160, 2173 (2016),[4] Appellant argued that the trial court should suppress evidence of the blood test results, because the Commonwealth conducted an illegal, warrantless blood draw, and Appellant did not provide knowing, voluntary, or intelligent consent. Appellant further argued that the police failed to provide Miranda[5] warnings after taking him into custody; therefore, certain incriminating statements made by Appellant required suppression.

The trial court conducted a suppression hearing on December 11, 2017. Immediately following the hearing, the court denied Appellant's motion as it related to evidence of the blood test results. Nevertheless, the court granted the motion as it related to Appellant's post-arrest statements.

Following trial, a jury convicted Appellant of DUI  general impairment and DUI  highest rate of alcohol. The trial court also found Appellant guilty of the summary vehicle offenses of registration and certificate of title required, required financial responsibility, unauthorized transfer or use of registration, and unlawful activities.[6] On June 28, 2018, the court sentenced Appellant to one to five years' imprisonment, plus fines, costs, and the loss of his driver's license for eighteen months.

_____

[4] The United States Supreme Court decided Birchfield on June 23, 2016, approximately nine months before Appellant's arrest in the instant case.

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

[6] 75 Pa.C.S. §§ 1301(a), 1786(f), 1372(3), and 4107(b)(2), respectively.

- 4 -

Appellant timely filed a post-sentence motion, arguing that the trial court should not have imposed a term of imprisonment at a state correctional facility, despite the fact that this was Appellant's third DUI conviction in the last ten years. The court denied Appellant's post-sentence motion on July 10, 2018.

Appellant timely filed a notice of appeal on August 9, 2018. After receiving an extension, Appellant filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[7] On January 7, 2019, the trial court filed a responsive opinion concluding that Appellant provided valid consent for the blood draw.

Appellant now raises one issue for our review:

> Whether the trial court erred in finding . . . Appellant gave valid consent to the collection of a sample of his blood by law enforcement officers.

Appellant's Brief at 6.

Appellant contends that the collection of a blood sample is a "search" under the federal and state constitutions, and police must obtain a warrant to take a sample of an individual's blood. Id. at 15. Appellant acknowledges that there are exceptions to the warrant requirement, including cases where an individual consents to the warrantless blood draw. Id. at 16. Appellant

_____

[7] Although Appellant raised five additional issues in his Rule 1925(b) statement, he has abandoned those issues on appeal by failing to raise them in his brief. See Commonwealth v. Rodgers, 605 A.2d 1228, 1239 (Pa. Super. 1992) (stating that "[w]e must deem an issue abandoned where it has been identified on appeal but not properly developed in the appellant's brief" (citation omitted)).

insists, however, that consent is valid only when it is a "knowing, intelligent, and voluntary relinquishment of [the] right to be protected against a warrantless search." Id.

Appellant maintains that he did not provide knowing or voluntary consent in this case, because the police did not advise him of the right to refuse consent. Id. at 17. Appellant argues that "[r]equesting a person to submit to a blood draw is not the equivalent of making the individual aware that they have the right to refuse the collection and demand a warrant . . . ." Id. Moreover, "[i]t is gratuitous to construe a response to a simple request to submit to a chemical test of blood as a knowing relinquishment of a fundamental right protected by both state and federal constitutions." Id. Based upon the foregoing, Appellant concludes the trial court should have suppressed all evidence relating to his blood test results.

We apply the following standard when reviewing the denial of a suppression motion:

> [O]ur initial task is to determine whether the [trial court's] factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

Commonwealth v. Bryant, 67 A.3d 716, 724 (Pa. 2013) (citation omitted).

"The United States Supreme Court has held that because 'the taking of a blood sample' is a search within the meaning of the Fourth Amendment to

the United States Constitution, police officers may not compel the taking of a blood sample without a search warrant, absent an applicable exception." Commonwealth v. Haines, 168 A.3d 231, 234 (Pa. Super. 2017) (quoting Birchfield, 136 S.Ct. at 2173 (footnote omitted)). "One such exception is consent, voluntarily given." Commonwealth v. Strickler, 757 A.2d 884, 888 (Pa. 2000) (citation omitted); see also Commonwealth v. Myers, 164 A.3d 1162, 1178 (Pa. 2017) (plurality) (explaining that Birchfield's holding "supports the conclusion that . . . an individual must give actual, voluntary consent at the time that testing is requested").[8]

"[A] trial court must consider the totality of the circumstances when determining if a defendant's consent to a blood draw was voluntary." Commonwealth v. Miller, 186 A.3d 448, 451 (Pa. Super. 2018) (citation omitted), appeal denied, 199 A.3d 858 (Pa. 2018).

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

Id. (citation omitted).

_____

[8] While this appeal was pending, the Pennsylvania Supreme Court granted allowance of appeal filed in Commonwealth v. Wolfel, 141 WAL 2018 (Pa. filed Apr. 10, 2019), to determine whether the Superior Court disregarded Birchfield by reversing an order suppressing the petitioner's blood test results. Wolfel, however, addresses the good faith exception to the exclusionary rule, which is not applicable to our disposition of the instant case.

Significantly, the Motor Vehicle Code governs situations where an individual arrested for DUI refuses to submit to chemical testing:

§ 1547. Chemical testing to determine amount of alcohol or controlled substance

(a) General rule. Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

(b) Civil penalties for refusal.

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

*    *    *

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547 (emphasis added).

In *Myers*, the Pennsylvania Supreme Court examined Section 1547, determining:

> By operation of the implied consent statute, once a police officer establishes reasonable grounds to suspect that a motorist has committed a DUI offense, that motorist shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance. Notwithstanding this provision, Subsection 1547(b)(1) confers upon all individuals under arrest for DUI an explicit statutory right to refuse chemical testing, the invocation of which triggers specified consequences.
>
> Under this statutory scheme, a motorist placed under arrest for DUI has a critical decision to make. The arrestee may submit to a chemical test and provide the police with evidence that may be used in a subsequent criminal prosecution, or the arrestee may invoke the statutory right to refuse testing, which: (i) results in a mandatory driver's license suspension under 75 Pa.C.S. § 1547(b)(1); (ii) renders the fact of refusal admissible as evidence in a subsequent DUI prosecution pursuant to 75 Pa.C.S. § 1547(e); and (iii) authorizes heightened criminal penalties under 75 Pa.C.S. § 3804(c) if the arrestee later is convicted of DUI. In very certain terms, this Court has held that, in requesting a chemical test, the police officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision. An arrestee is entitled to this information so that his choice to take a chemical test can be knowing and conscious. The choice belongs to the arrestee, not the police officer.

*Myers*, 164 A.3d at 1170-71 (citations, brackets, quotation marks, and footnote omitted) (emphasis added).

More recently, this Court has interpreted Section 1547 and *Myers* as requiring that police inform defendants arrested for DUI of their right to refuse chemical testing in order for consent to be valid. *See Commonwealth v.*

Krenzel, ___ A.3d __, ___, 2019 PA Super 159, 2019 WL 2167828, *6 (Pa. Super. filed May 20, 2019) (holding that the trial court erred as a matter of law in finding that the defendant's consent to a blood draw was voluntary where she was in custody and the police asked her to submit to a blood draw without providing a recitation of the defendant's rights under the police's DL-26B implied consent form or 75 Pa.C.S. § 1547, or confirming her consent by signature).[9]  The Krenzel Court concluded that a defendant cannot make a knowing choice of whether to submit to a blood draw when an officer fails to recite the Section 1547 rights informing the defendant of her right to refuse chemical testing.  Id.

Instantly, the trial court determined that Appellant provided valid consent under the totality of the circumstances:

> [Appellant's] assertion that he was not advised of his right to refuse is accurate.  Neither Sergeant Bartlett nor Officer Obermeyer explained the United States and/or Pennsylvania Constitution to [Appellant], or, the constitutional rights that he has that flow from these documents.  However, law enforcement is not required to provide legal and constitutional guidance to an individual being asked to consent to a search.

* * *

_____

[9] We acknowledge that the trial court did not have the benefit of the Krenzel decision, as this Court decided Krenzel while Appellant's case was pending on appeal.  As such, we reiterate: "Pennsylvania common law generally requires . . . criminal courts to apply the law in effect at the time of the appellate decision.  Accordingly, unless the decision specifically declares the ruling to be prospective only, [generally,] the new rule is to be applied retroactively to cases where the issue in question is properly preserved . . . ." Commonwealth v. Tizer, 684 A.2d 597, 601 (Pa. Super. 1996) (citations and quotation marks omitted).

- 10 -

[The suppression court] found credible Sergeant Bartlett's and Officer Obermeyer's testimony that they asked [Appellant] to consent to a draw, he did not appear to be confused, and he was willing to provide a sample. [Appellant] may now regret that he willingly agreed to the blood draw, but that [does not] change the fact that he willingly consented to the draw on March 28, 2017.

Trial Ct. Op., 1/7/19, at 5-6 (citations omitted).

Here, the trial court considered various factors and concluded that the police did not coerce Appellant, he fully cooperated, and he did not appear confused by Sergeant Bartlett's request. However, there is no dispute that the police asked Appellant to submit to the blood draw without notifying him of the consequences of refusal. Because Sergeant Bartlett was statutorily obligated to inform Appellant of his right to refuse chemical testing and the consequences arising therefrom, Appellant could not have made a knowing choice regarding whether to submit to the blood draw. See Krenzel, 2019 WL 2167828, at *6. Therefore, in light of Krenzel, we are constrained to conclude that the trial court erred in denying suppression.[10] See Bryant, 67 A.3d at 724.

Judgment of sentence vacated. Order denying suppression motion reversed. Case remanded for a new trial. Jurisdiction relinquished.

_____

[10] In light of our disposition, we need not address Appellant's additional argument regarding his subjective belief about the consequences of refusing to submit to a blood draw at the time of his arrest. See Appellant's Brief at 18.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/10/2019</u>