2020 PA Super 211

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TEDDY A. GASTON | : | |
| | : | |
| Appellant | : | No. 109 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 11, 2019
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0001237-2015

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED SEPTEMBER 01, 2020**

Appellant, Teddy A. Gaston, appeals from the December 11, 2019, judgment of sentence entered in the Court of Common Pleas of Schuylkill County following his conviction by a jury on the charges of driving while under the influence ("DUI") of a controlled substance-schedule 1-1st offense, driving while operating privilege is suspended or revoked (with a BAC .02% or greater), and limitations on driving (backing up of vehicle improperly).[1]  On appeal, Appellant challenges the denial of his pre-trial suppression motion, in which he alleged that his consent to a warrantless blood draw was coerced in

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A.  §  3802(d)(1)(i), 75 Pa.C.S.A.  §  1543(b)(1.1)(i), and 75 Pa.C.S.A. § 3702, respectively.

violation of **Birchfield v. North Dakota**, ___ U.S. ___, 136 S.Ct. 2160 (2016). After a careful review, we affirm.

The relevant facts and procedural history are as follows: The police effectuated a stop of Appellant's motor vehicle in Shenandoah on November 2, 2014, and Appellant underwent a blood test. The test yielded a blood alcohol content of 0.038%. N.T., 11/1/19, at 50. Additionally, Appellant's blood tested positive for amphetamines, Delta-9-THC, Delta-9-Carboxy-THC, and 11-Hydroxy-Delta-9-THC. **Id.** at 61. All of the THC drugs are "cannabinoids," which remain in a person's system after he or she ingests marijuana. **Id.** Consequently, Appellant was charged with, *inter alia*, numerous DUI-related offenses.

In 2016, while the present case remained pending at the pre-trial stage, the Supreme Court of the United States issued its opinion in **Birchfield**, **supra**. Relevantly, **Birchfield** held the Fourth Amendment does not permit warrantless blood test results[2] incident to arrests for DUI and refined the notion of consent in the context of intoxicated driving, concluding that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."[3] **Id.** at 2186.

---

[2] It is well-settled that a blood test constitutes a "search" within the meaning of the Fourth Amendment. **See Birchfield**, **supra**.

[3] We note **Birchfield** is applicable to cases in which a driver has been arrested for alcohol-related and/or drug-related DUI. **Commonwealth v. Ennels**, 167

On September 11, 2017, Appellant filed a counseled pre-trial motion contending **Birchfield** required suppression of the blood evidence. Specifically, in a motion entitled "Birchfield Motion," Appellant averred the following:

1. On November 2, 2014[,] [Appellant] was driving a vehicle in the Borough of Shenandoah at or about 0223 hours.

2. [Appellant] was stopped by David Stamets of the Shenandoah Police Department.

3. [Appellant] was detained after a series of psychophysical divided attention test[s].

4. He was transported to the Pottsville South Hospital and blood was drawn.

5. The blood test was positive for amphetamines and marijuana as well as registering a .038% WT/VOL blood alcohol.

6. The police obtained consent to the blood test after reading him the Pennsylvania DL-26 Form[4] advising of enhanced criminal penalties for refusal and without a warrant.

WHEREFORE, the blood test results must be suppressed.

Appellant's Pre-Trial Motion, filed 9/11/17 (footnote added).

---

A.3d 716, 721-22 (Pa.Super. 2017) ("No matter the substance suspected of affecting a particular DUI arrestee, **Birchfield** requires that a blood test be authorized either by a warrant (or case-specific exigency), or by individual consent not based on the pain of criminal consequences."). In the case *sub judice*, there was no warrant, and consent to the blood draw is the only exception the suppression court found to be applicable.

[4] Form DL-26 is issued by Pennsylvania's Department of Transportation and describes Pennsylvania's implied consent law, 75 Pa.C.S.A. § 1547. In the case *sub judice*, as further discussed *infra*, there is no dispute that the DL-26 Form, which was provided to Appellant on November 2, 2014, was not **Birchfield** complaint. Notably, the U.S. Supreme Court issued its decision in **Birchfield** on June 23, 2016.

- 3 -

The matter proceeded to a suppression hearing on September 25, 2017, at which Police Officer David Stamets and Appellant testified.

Specifically, Officer Stamets testified he was on routine patrol on November 2, 2014, when at 2:23 a.m., he observed Appellant exit the West Street Bar, enter a parked vehicle, and drive the vehicle in reverse for approximately one and one-half blocks, including through an intersection. N.T., 9/25/17, at 9-10. Officer Stamets activated his police cruiser's lights and effectuated a traffic stop of Appellant's vehicle. *Id.* at 10.

Upon approaching Appellant, who was in the driver's seat, Officer Stamets noticed the odor of alcohol and observed Appellant's eyes were bloodshot with pupils dilated. *Id.* Appellant was sweating profusely and had goosebumps. *Id.*

After Appellant exited the vehicle, Officer Stamets conducted field sobriety tests, which Appellant failed. *Id.* Officer Stamets asked Appellant if he was using stimulants or alcohol, and Appellant admitted he had smoked marijuana, as well as ingested alcohol. *Id.* at 11. Officer Stamets discovered Appellant's driver's license had been suspended. *Id.*

Officer Stamets testified that, at this point, he "requested that [Appellant] submit to blood tests, which he agreed he would submit to. Later, he read a DL-26 Form to [Appellant]. And [Appellant] signed the form acknowledging the form was provided to him." *Id.* Officer Stamets clarified that, after the traffic stop, he transported Appellant to the police station where

he asked Appellant to submit to a blood test, Appellant verbally agreed to a blood test, and then he read to Appellant the DL-26 Form verbatim. *Id.* at 12-14, 17-18. Officer Stamets testified he did not advise Appellant of any increased penalties for not submitting to the blood test until after Appellant had already agreed to the test. *Id.* at 34-35.

Appellant offered a contrary version of events. He testified Officer Stamets stopped his vehicle, transported him to the police station, and after being at the police station for ten minutes, Officer Stamets told him he was taking him to the hospital for a blood test. *Id.* at 21. Appellant testified the officer stated, without looking at any form, "You can take the test or you cannot take the test." *Id.* at 22. Moreover, Appellant indicated the officer stated, "If you don't take the test…your license will be suspended with further penalties. You'll have further penalties and fines." *Id.* Appellant testified the officer also specifically told him he would go to jail upon refusing the test. *Id.* at 23. Appellant testified that, at this point, he agreed to the blood test. *Id.*

Appellant testified that, after he agreed to the blood test, the officer transported him to the Pottsville Hospital, and the officer read the DL-26 Form to Appellant for the first time while Appellant was sitting in the technician's chair in order to have his blood drawn. *Id.* at 24-25.

By order entered on October 3, 2017, the trial court denied Appellant's suppression motion. Initially, with regard to the DL-26 Form, the suppression court acknowledged the form, which was read to Appellant on November 2,

2014, advised Appellant "of enhanced criminal penalties in the event of a blood test refusal." Suppression Court Opinion, filed 10/3/17, at 1. However, concluding Officer Stamets' testimony was credible, the suppression court further found that Appellant consented to the blood test at the police station **before** Officer Stamets read Appellant the information on the Pennsylvania DL-26 Form.[5] *Id.* at 2 (suppression court found: "While at the station, [Officer] Stamets asked [Appellant] if he would agree to a blood test. [Appellant] agreed. Thereafter, [Officer] Stamets read [Appellant] the information on the Pennsylvania DL-26 Form.").

Moreover, the suppression court found incredible Appellant's testimony that, before he consented to the blood draw, the officer, without reference to the DL-26 Form, advised him that if he refused to give consent he would face increased penalties, including jail, a license suspension, and a fine. *Id.* Accordingly, the suppression court reasoned that, since Appellant consented to the warrantless blood draw without being aware that his refusal would result in enhanced criminal penalties, Appellant voluntarily consented to the blood draw and test. *See id.*

Specifically, the suppression court concluded:

> [I]t is found that [Appellant] submitted to the blood draw voluntarily without duress or compulsion arising from anything the officer did or stated, including by his reading the DL-26 Form

---

[5] The suppression court noted that Appellant, in his own testimony, asserted the officer read the DL-26 Form to him for the first time at the hospital while he was sitting in the technician's chair in order to have his blood drawn. *Id.*

- 6 -

language following [Appellant's] consent to the blood draw. As the reliable proof provided no indication that the information [Appellant] received subsequent to his consent served in any manner to vitiate, effect or otherwise impact the consent which rendered the search reasonable, [Appellant's] suppression motion is…denied.

*Id.*

Thereafter, Appellant proceeded to a jury trial, and he was convicted of the offenses indicated *supra*. On December 11, 2019, the trial court sentenced Appellant to an aggregate of one year to five years in prison. This timely, counseled appeal followed on January 9, 2020. On January 10, 2020, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, counsel filed a statement on behalf of Appellant, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.[6]

On appeal, Appellant sets forth the following sole issue in his "Statement of Questions Involved" (verbatim):

1. Did the suppression court err in failing to suppress a warrantless blood draw?

_____

[6] On January 10, 2020, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days of the entry of the order. On February 4, 2020, four days late, counsel filed a Rule 1925(b) statement on behalf of Appellant. Nevertheless, in its Rule 1925(a) opinion, the trial court addressed the issues raised in the untimely Rule 1925(b) statement. Accordingly, we overlook the untimely nature of the counseled Rule 1925(b) statement and proceed to a review of the issues raised on appeal. **See Commonwealth v. Burton**, 973 A.2d 428 (Pa.Super. 2009) (*en banc*) (holding counsel's failure to file a timely Pa.R.A.P. 1925(b) statement constitutes ineffectiveness *per se* and where the trial court addresses the issues in its opinion this Court may overlook the untimeliness without remanding the matter to the lower court).

Appellant's brief at 4 (suggested answer omitted).

Relying upon **Birchfield**, Appellant contends the suppression court erred in failing to suppress his blood test results since the police did not obtain a warrant and Appellant did not provide valid consent for the blood draw. In this vein, he alleges any consent he gave was involuntary since: (1) his consent was given out of fear when the police officer, without referencing the DL-26 Form, informed him of enhanced criminal penalties in the event of his refusal, and (2) his consent was coerced by the police officer's reading of the DL-26 Form.

The Commonwealth, in response, contends the suppression court properly concluded Appellant voluntarily consented to the blood draw prior to Officer Stamets reading the implied consent warnings from the DL-26 Form or otherwise advising Appellant of the enhanced criminal penalties for refusing to consent to the blood test. Thus, the Commonwealth contends Appellant's consent was neither tainted nor coerced by the language in the DL-26 Form or any other statements made by Officer Stamets regarding heightened criminal penalties for refusal; therefore, the suppression court did not err in denying the suppression motion based on **Birchfield**.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct....Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

> Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." Thus, the conclusions of law of the court[ ] below are subject to our plenary review.

*Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654 (2010) (quotation and citation omitted). "Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Shreffler*, 201 A.3d 757, 763 (Pa.Super. 2018) (citation omitted).

As a preliminary matter, we note that, although the legal question before us is significantly informed by the *Birchfield* decision, the events at issue here preceded the issuance of the U.S. Supreme Court's opinion in that case.[7] Accordingly, we recognize the police officer in this matter had no reason to anticipate the subsequent change in the law.

"Nonetheless, litigants generally are entitled to benefit from changes in the law that develop before their judgments of sentence become final, provided that the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal." *Commonwealth v. Trahey*, ___ Pa. ___, 228 A.3d 520, 530 (2020) (quotation marks, quotation, and citation omitted).

---

[7] Appellant was arrested and subject to the blood draw on November 2, 2014. The U.S. Supreme Court decided *Birchfield* on June 23, 2016.

In the case *sub judice*, Appellant adequately preserved his challenge to the constitutionality of the blood draw by filing and litigating his pre-trial suppression motion, which was based on the holdings in **Birchfield**. **See id.** "Accordingly, although the investigating officer [was] reasonably operating under an older understanding of the requirements of the Fourth Amendment, [Appellant] is entitled to a review conducted through the lens of the Supreme Court's more recent pronouncements in this area." **Trahey**, **supra**, 228 A.3d at 530 (applying the pronouncement in **Birchfield** to warrantless blood draw occurring on September 4, 2015). **See Commonwealth v. Hays**, ___ Pa. ___, 218 A.3d 1260 (2019) (holding that in order for **Birchfield** to apply retroactively, an appellant must preserve the issue in question at all stages of adjudication up to and including any direct appeal).

In **Birchfield**, the United States Supreme Court "refined the notion of consent in the context of intoxicated driving." **Commonwealth v. Geary**, 209 A.3d 439, 442 (Pa.Super. 2019). One of the petitioners in **Birchfield** claimed that his consent to a blood test following his arrest for DUI had been coerced by the officer's warning that a refusal to submit to the blood test constituted a crime itself under North Dakota law. The Supreme Court agreed, concluding that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." **Birchfield**, 136 S.Ct. at 2186. As such, the Supreme Court held that if a defendant's explicit consent is found to have been influenced by an improper criminal penalty for

refusal, the court must then assess the voluntariness of the consent under the totality of the circumstances. **See id.**

In the case *sub judice*, despite Appellant's contention to the contrary, **Birchfield** does not require the conclusion that Appellant's consent was involuntary. As explained above, **Birchfield** applies to situations in which a defendant's consent is obtained based upon the threat of additional criminal penalties if the blood test is refused.

In the instant case, the suppression court found that the DL–26 Form read to Appellant was not compliant with **Birchfield** since it improperly warned Appellant of additional criminal penalties if he refused the blood test. Suppression Court Opinion, filed 10-/3/17, at 1-2. However, the suppression court specifically concluded Officer Stamets did not read the DL-26 Form, or otherwise advise Appellant of any increased criminal penalties for refusal, until **after** Appellant explicitly gave his consent to the blood test.[8] **See id.** Thus, the suppression court concluded that Appellant's explicit consent was neither tainted nor coerced by the **Birchfield**-offending DL-26 Form and/or other police statements threatening enhanced criminal penalties. We find no error of law in this regard.

---

[8] The suppression court's factual findings are supported by the record. Accordingly, we are bound by those findings. **See Jones**, **supra**.

This Court's decision in *Commonwealth v. Moser*, 188 A.3d 478 (Pa.Super. 2018), is instructive. Therein, this Court relevantly held the following:

> [In] *Commonwealth v. Haines*, 168 A.3d 231 (Pa. Super. 2017),…we addressed a situation in which it was unclear as to whether the defendant had consented to the blood test **before** or **after** having been read the DL–26 [F]orm that improperly threatened criminal penalties for refusal to submit to the blood test in violation of *Birchfield* and its progeny. We explained that:
>
> > [I]f Haines validly consented **before** being informed that he faced enhanced criminal penalties for failure to do so, then his consent would not be tainted by the warning and the blood test results would be admissible. If, however, he did not consent until **after** [the officer] informed him that he would face enhanced criminal penalties if he refused to consent, then the trial court did not necessarily err in granting his motion to suppress the test results.
>
> *Haines*, 168 A.3d at 236 (emphasis in original). Thus, pursuant to *Haines*, if consent was provided prior to the reading of the DL–26 [F]orm, then the consent would not have been tainted by the threat of additional criminal penalties and, therefore, would not be in violation of *Birchfield*.
>
> Here, Moser gave his consent to the blood test while he was in the patrol car on the way to the hospital. Officers read [F]orm DL–26 to Moser at the hospital, after he had already consented to the blood draw. Accordingly, Moser's consent was not tainted by the threat of additional criminal penalties as outlined in [F]orm DL–26, and therefore, was not obtained in violation of *Birchfield*[.]

*Moser*, 188 A.3d at 483 (citations to record omitted) (emphasis in original).

Similar to *Moser*, the suppression court in the instant case concluded the officer read the DL-26 Form to Appellant after he had already consented to the blood draw. Further, the suppression court did not find credible

- 12 -

Appellant's testimony that, aside from the DL-26 Form, Officer Stamets made statements indicating Appellant would face enhanced criminal penalties before Appellant expressly consented to the blood test. Consequently, the suppression court did not err in concluding Appellant's consent to submit to the blood test was not given on pain of committing a criminal offense in violation of **Birchfield**.[9] **See Commonwealth v. Neysmith**, 192 A.3d 184 (Pa.Super. 2018) (holding the defendant's consent to blood draw, which was given prior to the defendant being advised of the warnings in the non-compliant **Birchfield** DL-26 Form, was voluntary and not coerced by the threat of enhanced penalties for refusing the test).

For all of the foregoing reasons, we find no merit to Appellant's suppression claim, and we affirm his judgment of sentence.

_____

[9] As indicated *supra*, the suppression court properly concluded Appellant's explicit consent was not influenced by an improper criminal penalty for refusal. Therefore, the suppression court did not otherwise assess the voluntariness of the consent under the totality of the circumstances. **See Birchfield**, 136 S.Ct. at 2186. In any event, we note Appellant limited his pre-trial motion to suppression of his blood test results on the basis of **Birchfield's** holding that the police may not threaten enhanced punishment for refusing a blood test in order to obtain consent. Accordingly, we so limit our analysis. **See Commonwealth v. Little**, 903 A.2d 1269, 1272-73 (Pa.Super. 2006) ("[A]ppellate review of [a ruling on] suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal.") (quotation omitted)). **See also Moser**, *supra*.

Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/1/2020