J-S23014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE VEASY | : | |
| | : | |
| Appellant | : | No. 1100 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 25, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000503-2018

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: Filed: December 30, 2020

Appellant Jermaine Veasy appeals from the judgment of sentence imposed following his conviction for driving under the influence (DUI)—highest rate of alcohol and related offenses at a non-jury trial. Appellant argues that the trial court erred by denying his pre-trial motion to suppress.[1] For the reasons that follow, we vacate the judgment of sentence, reverse the order denying suppression, and remand for a new trial.

---

[1] On October 1, 2020, this Court entered a memorandum decision reversing the trial court's order denying Appellant's motion to suppress and remanding for a new trial. On October 15, 2020, the Commonwealth filed an application for reargument, arguing that our decision conflicted with this Court's recent precedential decision in ***Commonwealth v. Gaston***, 239 A.3d 135 (Pa. Super. 2020). App. for Rearg., 10/15/20, at 4-5, 7-8. ***Gaston*** was filed between the time the original memorandum was circulated and filed. This Court granted reconsideration on November 25, 2020, to address ***Gaston***.

The trial court set forth its factual findings regarding the suppression hearing as follows:

On November 5, 2017, at approximately 1:40 a.m., [Appellant] was observed traveling west on 10th Street in Marcus Hook Borough, Delaware County, Pennsylvania by Officer Daniel Barnett and Officer Daniel Pasley. The officers, while sitting in their patrol cars in a parking lot at the intersection of 10th Street and Church Street, noticed [Appellant's] white Mercedes-Benz was audibly operating at a high rate of speed. As they continued to observe [Appellant's] vehicle, the Officers noticed [Appellant's] vehicle did not have headlights on in conditions that were dark and rainy. After pulling behind [Appellant], Officer Barnett witnessed as [Appellant's] vehicle came up on another vehicle at a high rate of speed and then went around a median on the road to travel into the oncoming traffic lane. Officer Barnett immediately attempted to pull [Appellant] over following these observations. [Appellant] stopped his vehicle two blocks later at around 10th Street and Blueball Avenue.

Officer Barnett noticed a strong odor of alcoholic beverages coming from the vehicle immediately upon making contact with [Appellant]. [Appellant] informed Officer Barnett of his license to carry a Smith & Wesson M&P firearm, located in the glove compartment. After checking [Appellant's] credentials, Officer Barnett returned to the vehicle and asked [Appellant] to step out. Officer Barnett then asked [Appellant] whether or not he had been drinking that evening, to which [Appellant] responded by asking, "What time is it?" [Appellant] had slurred speech and difficulty speaking throughout the encounter. Officer Barnett then requested [Appellant] undergo a series of three field sobriety tests. [Appellant] was compliant with the Officer but failed each of the three field sobriety tests administered. Officer Barnett then asked [Appellant] to submit to a Preliminary Breath Test (PBT) but was unable to get a proper readout from the device.

Following [Appellant's] failure to complete the field sobriety tests, Officer Barnett placed him under arrest for suspicion of driving while intoxicated. [Appellant] was placed in the back of Officer Pasley's patrol car in handcuffs. Officer Barnett then requested [Appellant] submit to a chemical test of his blood, warning [Appellant] that his refusal "could" lead to the suspension of his license for "approximately 12 months." [Appellant] gave verbal

consent to Officer Barnett's request. [Appellant] was transported by Officer Pasley to Crozer-Chester Medical Center. During the ride, Officer Pasley and [Appellant] made no conversation besides [Appellant's] request for his handcuffs to be loosened. At the hospital, [Appellant] was brought into an examination room and uncuffed by Officer Pasley, who warned him, "not to do anything stupid". A nurse extracted two vials of blood from [Appellant]. Later testing of the blood revealed a BAC of 0.239%.

Trial Ct. Op., 8/2/19, at 2-3 (record citations omitted). We add that Officer Barnett testified that he did not read the DL-26B Form, which contains implied consent warnings, to Appellant immediately before the extraction of Appellant's blood because Appellant had already given his verbal consent to the blood draw. N.T. Suppress Hr'g, 9/20/18, at 40-41. Officer Barnett testified that it was his understanding that the DL-26B Form is only used when a motorist is going to refuse the blood test. *Id.*

Appellant was later charged with DUI—general impairment, DUI—highest rate of alcohol, failing to use required lighting, driving at an unsafe speed, careless driving, reckless driving, and disregarding traffic lanes.[2] *See* Criminal Compl., 11/5/17; *see also* Criminal Information, 2/28/18. On March 29, 2018, Appellant filed an omnibus pretrial motion, which included a motion to suppress. Therein, Appellant argued that pursuant to *Birchfield v. North Dakota*, ___ U.S. ____, 136 S. Ct. 2160 (2016), the trial court should suppress evidence of the blood test results, because the Commonwealth conducted an illegal, warrantless blood draw, and Appellant did not provide

---

[2] 75 Pa.C.S. §§ 3802(a)(1), 3802(c), 4302(a)(2), 3361, 3714(a), 3736(a), 3309(1), respectively.

knowing, voluntary, or intelligent consent to the blood draw. **See** Omnibus Pretrial Mot., 3/29/18, at 1-4.

The trial court held a suppression hearing on September 20, 2018. Officer Barnett, Officer Pasley, and Appellant testified at the hearing. At the end of hearing, the trial court held its decision under advisement. Additionally, the trial court ordered the parties to submit briefs containing their arguments, which they did.[3] In his brief, Appellant argued that Officer Barnett's verbal implied consent warning, including the use of the word "could" instead of "will" for a defendant's license suspension upon refusal, was inaccurate and therefore, Appellant did not voluntarily consent to the blood draw. Mem. of Law, 12/10/18, at 2, 7-11. On December 6, 2018, the trial court issued an order denying Appellant's motion to suppress.[4]

_____

[3] Appellant and the Commonwealth apparently served their briefs on the trial court without filing them as of record. After the trial court denied his motion to suppress, Appellant filed a copy of his brief, captioned "Defendant's Memorandum of Law in Support of Motion to Suppress" with the trial court on December 10, 2019.

[4] The trial court's order reads as follows: "AND NOW, to wit, this 6th day of December, AD, 2018, upon consideration of Defendant's Omnibus Pretrial Motion filed on March 29, 2018, and after a hearing thereon, it is hereby ORDERED and DECREED that said Motion is DENIED." Order, 12/6/18. The trial court's order did not include findings of fact and conclusions of law required under Pa.R.Crim.P. 581(I). However, we may "look at the trial court's Rule 1925(a) opinion to garner findings of fact and conclusions of law." **Commonwealth v. Stevenson**, 832 A.2d 1123, 1126 (Pa. Super. 2003) (citation omitted). The trial court's Pa.R.A.P. 1925(a) opinion adequately relates the court's findings of fact and conclusions of law. **See** Trial Ct. Op. at 1-3. Therefore, we need not remand for this case for the trial court to

On January 25, 2019, the Commonwealth withdrew the charge of reckless driving, and the case proceeded to a non-jury trial. The trial court held the verdict under advisement. On February 11, 2019, the trial court found Appellant guilty of DUI—general impairment, DUI—highest rate of alcohol, driving at an unsafe speed, and careless driving. The trial court found Appellant not guilty of the remaining charges.

On March 25, 2019, the trial court sentenced Appellant to twenty-three months' county intermediate punishment, of which 180 days were to consist of home confinement with electronic home monitoring, and a consecutive term of three years' probation. Appellant was also ordered to undergo a drug and alcohol evaluation and to pay $1,550 in fines, $300 in court costs, and a $134 lab fee.

On April 15, 2019, Appellant filed a timely notice of appeal. He filed an untimely court-ordered Pa.R.A.P. 1925(b) statement.[5] The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

_____

comply with Pa.R.Crim.P. 581(I), and may review the trial court's decision. **See Stevenson**, 832 A.2d at 1126.

[5] We note that the trial court ordered Appellant to file a Rule 1925(b) statement by May 7, 2019. Appellant filed his 1925(b) statement on May 15, 2019. Appellant did not request, nor did the trial court grant, an extension of time to file the 1925(b) statement. Therefore, it was untimely filed. Under **Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super. 2009) (*en banc*), the late filing of a Rule 1925(b) statement is *per se* ineffectiveness of counsel in criminal cases. **Burton**, 973 A.2d at 433; **accord** Pa.R.A.P. 1925(c)(3). Nevertheless, a remand is not necessary here because "the trial court has filed

Appellant raises two issues for our review:

1. Based on the totality of the circumstances relayed during the suppression hearing, did the trial court commit an error of law in denying Appellant's motion to suppress?

2. Did the trial court err in denying Appellant's suppression motion when the arresting officer did not provide Appellant with the required opportunity to cho[o]se between yielding consent to a warrantless chemical test or, alternatively, refusing to yield[?]

Appellant's Brief at 6-7 (unpaginated) (some capitalization omitted).[6]

We summarize Appellant's arguments together as they are closely related. Appellant argues that the trial court erred in denying his motion to suppress because Appellant did not voluntarily consent to the blood draw. **Id.** at 13-23 (unpaginated). Appellant argues the trial court erred in not considering our Supreme Court's decision in **Commonwealth v. Myers**, 164

_____

an opinion addressing the issue[s] presented in [Appellant's] 1925(b) concise statement." **Id.**

[6] Appellant's brief lacks page numbers. Pa.R.A.P. 2173 requires that all pages of a brief, except for the table of contents and table of citations, to be numbered separately in Arabic figures. We have explained that "compliance with the Rules of Appellate Procedure concerning the briefs and reproduced record are not guideposts but a mandate." **McGee v. Muldowney**, 750 A.2d 912, 913 n.1 (Pa. Super. 2000) (citation omitted). However, the lack of page numbers and other technical defects in Appellant's brief do not impede our review. **See Commonwealth v. Levy**, 83 A.3d 457, 461 n.2 (Pa. Super. 2013) (noting that despite the defects in the appellant's brief, the appellant "has presented to this Court a thorough and well-developed brief in support of his arguments. Thus, [the appellant's] omissions do not impede our review. Accordingly, we do not find them to be 'substantial,' and we will not exercise our discretion to quash or dismiss his brief." (citations omitted)).

A.3d 1162 (Pa. 2017) (plurality).[7]  *Id.* at 13 (unpaginated).  More specifically, Appellant argues that the trial court erred in concluding that "because [Appellant] gave verbal consent immediately upon the request of [Officer Barnett], there was no need to read the DL-26B [F]orm . . . . [and] because [Appellant] consented to the blood test . . . [Officer Barnett's] statements were not misleading and did not affect [Appellant']s decision."  *Id.* at 15 (unpaginated) (quoting Trial Ct. Op. at 4 (some formatting altered)).

Appellant argues that the facts of this case are comparable to those of *Commonwealth v. Krenzel*, 209 A.3d 1024, 1032 (Pa. Super. 2019), *appeal denied*, 222 A.3d 370 (Pa. 2019).  *Id.* at 19 (unpaginated).  According to Appellant, in both *Krenzel* and this case, the defendants were pulled over and arrested for DUI after police administered field sobriety tests.  *Id.* (citations omitted).  Appellant states that neither he nor Krenzel were informed of their rights under 75 Pa.C.S. § 1547.  *Id.* at 20 (unpaginated).  Appellant argues that the police are "statutorily obligated" under 75 Pa.C.S. § 1547 to inform a suspect of the "right to refuse chemical testing and the consequences arising therefrom" and the failure to do so is grounds to suppress the blood draw. *Id.* (quoting *Krenzel*, 209 A.3d at 1032).

Appellant also argues that the trial court's and the Commonwealth's reliance on *Commonwealth v. Gorbea-Lespier*, 66 A.3d 382 (Pa. Super.

---

[7] Only section II(C) of *Myers* is a plurality opinion.  *Myers*, 164 A.3d at 1164, 1173-81.  A majority of our Supreme Court joined the remainder of the decision.  *Id.* at 1164.

2013), to establish that he consented to the blood draw is in error. *Id.* at 20-22 (unpaginated). According to Appellant, in *Gorbea-Lespier*, the defendant was informed that a refusal to submit to the test would result in a minimum twelve month license suspension. *Id.* at 21 (unpaginated) (citing *Gorbea-Lespier*, 66 A.3d at 384). Here, Appellant contends that Officer Barnett informed him that a refusal to submit to the blood test "could" result in a license suspension of "up to twelve months" instead of informing him that refusal will result in a twelve month license suspension. *Id.* (citation omitted). Appellant additionally notes that in *Gorbea-Lespier*, the defendant was informed that he did not have a right to consult with anyone, including an attorney prior to testing, while here, Officer Barnett did not provide the statutorily required warning that Appellant did not have a right to consult anyone, including an attorney, before choosing to consent to the blood test. *Id.* at 21-22 (unpaginated) (citing *Gorbea-Lespier*, 66 A.3d at 384).

Lastly, Appellant notes that Officer Pasley, who escorted Appellant to the hospital for the blood draw, also failed to provide Appellant with the necessary implied consent warnings at the time of the blood draw, which is tantamount to a separate statutory violation supporting the suppression of the blood draw as nonconsensual. *Id.* at 22-23 (unpaginated). Appellant claims that implied consent warnings should have been given at the time of the blood draw, which Officer Pasley did not do. *Id.* (citing *Myers*, 164 A.3d at 1174).

The Commonwealth responds that under 75 Pa.C.S. § 1547(a), a defendant is deemed to have consented to chemical testing and a police officer

has the duty to inform the defendant that his or her driver's license will be suspended upon refusal to submit to chemical testing. Commonwealth's Brief at 7-8. According to the Commonwealth, the trial court properly concluded that an officer only has a duty to advise a defendant of the right to refuse chemical testing and need only read the implied consent warnings if the defendant refuses to submit to testing. *Id.* at 8 (citing *Gorbea-Lespier*, 66 A.3d at 389-90); *see also* App. for Rearg., 10/15/20, at 5-6 (same). The Commonwealth reasons that because Appellant did not refuse testing, the officers had no obligation to provide Appellant with the implied consent warnings. Commonwealth's Brief at 8; *see also* App. for Rearg. at 5-6.

In support, the Commonwealth argues that this Court's decision in *Gorbea-Lespier* held that implied consent warnings are only required when a defendant refuses chemical testing and that our Supreme Court's decision in *Myers* did not overrule that holding of *Gorbea-Lespier*. App. for Rearg. at 6. The Commonwealth further asserts that if a defendant "is cooperative, immediately consents, and does not indicate a desire to speak to an attorney, then why does the officer need to tell him that he does not have the right to speak with an attorney?" *Id.* at 7-8.

Furthermore, the Commonwealth argues that in *Gaston*, this Court affirmed the trial court's denial of suppression of a chemical blood test where the defendant consented to the test before the police read defective implied consent warnings. *Id.* at 5, 7-8. The Commonwealth claims that this Court's recent decision in *Gaston* is consistent with the holding of *Gorbea-Lespier*

that full implied consent warnings are not required unless a defendant actually refuses testing. *Id.* at 5, 7.

The Commonwealth also argues that *Krenzel* is distinguishable from the facts of this matter. Commonwealth's Brief at 12-13. The Commonwealth emphasizes that unlike *Krenzel*, Officer Barnett informed Appellant of his right to refuse testing but suggested that his refusal "could" result in a suspension of his driving privileges. App. for Rearg. at 6-7. The Commonwealth claims that in *Krenzel*, the police did not provide the defendant with the implied consent warnings at all, while in this case, Officer Barnett informed Appellant of his right to refuse and provided some warnings of the consequences of a refusal. Commonwealth's Brief at 12-13.

Lastly, the Commonwealth argues that although Officer Barnett's warnings differed from those contained in the DL-26B Form, Officer Barnett sufficiently advised Appellant of the consequences of refusal and Appellant consented to the blood test. *Id.* at 13-14. The Commonwealth argues that the police are not required to read the exact language of the DL-26B Form to a motorist for consent to a breath or blood test to be knowing and voluntary. App. for Rearg. at 3. The Commonwealth notes that "[o]ur Supreme Court has never held that the DL-26 Form must be read word-for-word in order for the consent to be valid." *Id.* at 7. The Commonwealth continues that although Officer Barnett's warned Appellant that his driving privilege "could," rather than "would" be suspended, that deviation from the DL-26B Form did not affect Appellant's decision to consent to the blood draw. Commonwealth's

Brief at 11. Consequently, the Commonwealth claims that the trial court's finding that Appellant's consent was voluntary was correct based on the facts in the record. *Id.* at 9-10, 13-14.

We apply the following standard when reviewing the denial of a suppression motion:

> [o]ur initial task is to determine whether the [trial court's] factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013) (citation omitted). In addition, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa. Super. 2016) (citation omitted).

"The United States Supreme Court has held that because 'the taking of a blood sample' is a search within the meaning of the Fourth Amendment to the United States Constitution, police officers may not compel the taking of a blood sample without a search warrant, absent an applicable exception." *Commonwealth v. Haines*, 168 A.3d 231, 234 (Pa. Super. 2017) (quoting *Birchfield*, ___ U.S. at ____, ____, 136 S. Ct. at 2173, 2185 (footnote omitted)). "One such exception is consent, voluntarily given." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citation

- 11 -

omitted); ***see also Myers***, 164 A.3d at 1178 (explaining that ***Birchfield***'s holding "supports the conclusion that . . . an individual must give actual, voluntary consent at the time that testing is requested.").

In determining whether Appellant provided voluntary consent to the warrantless blood test, we note:

> [i]n determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.
>
> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Commonwealth v. Venable***, 200 A.3d 490, 497-98 (Pa. Super. 2018) (citations omitted).

The following Motor Vehicle Code provisions address circumstances in which an individual arrested for DUI refuses to submit to chemical testing:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(a) General rule.—**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of . . . 3802 (relating to driving under influence of alcohol or controlled substance). . . .

**(b) Civil penalties for refusal.—**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person. . . .

(2) **It shall be the duty of the police officer to inform the person that**:

(i) **the person's operating privilege will be suspended upon refusal to submit to chemical testing** and the person will be subject to a restoration fee of up to $2,000; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547 (emphases added).

In **Myers**, our Supreme Court examined a substantially identical Section

1547 and determined that

[b]y operation of the implied consent statute, once a police officer establishes reasonable grounds to suspect that a motorist has committed a DUI offense, that motorist shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the

> presence of a controlled substance. Notwithstanding this provision, Subsection 1547(b)(1) confers upon all individuals under arrest for DUI an explicit statutory right to refuse chemical testing, the invocation of which triggers specified consequences.
>
> Under this statutory scheme, a motorist placed under arrest for DUI has a critical decision to make. The arrestee may submit to a chemical test and provide the police with evidence that may be used in a subsequent criminal prosecution, or the arrestee may invoke the statutory right to refuse testing, which: (i) results in a mandatory driver's license suspension under 75 Pa.C.S. § 1547(b)(1); (ii) renders the fact of refusal admissible as evidence in a subsequent DUI prosecution pursuant to 75 Pa.C.S. § 1547(e); and (iii) authorizes heightened criminal penalties under 75 Pa.C.S. § 3804(c) if the arrestee later is convicted of DUI. **In very certain terms, this Court has held that, in requesting a chemical test, the police officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision.** *See* [*Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 877-78 (Pa. 1989)]. An arrestee is entitled to this information so that his choice to take a chemical test can be knowing and conscious. *Id.* at 878. The choice belongs to the arrestee, not the police officer.

*Myers*, 164 A.3d at 1170-71 (some citations and footnote omitted, some formatting altered, and emphasis added).

In *Krenzel*, this Court interpreted Section 1547 and *Myers* as requiring the police to inform suspects arrested for DUI of their right to refuse chemical testing in order for their consent to be valid. *See Krenzel*, 209 A.3d at 1031-32. In *Krenzel*, the police stopped the defendant for erratic driving and observed that the defendant exhibited physical signs of intoxication. *Id.* at 1026. The defendant failed field sobriety tests. *Id.* The officer then asked if the defendant was willing to submit to a blood test, but the officer did not read

any part of the DL-26 implied consent form to the defendant. *Id.* at 1026, 1031. The defendant consented to the blood test and was transported to Chester County Hospital where her blood was drawn. *Id.* The defendant filed a motion to suppress, which the trial court denied. *Id.* at 1027. Following her conviction, the defendant appealed, arguing her consent was not voluntary because, among other reasons, "the police never advised her of her right to refuse the blood draw." *Id.* (citation omitted). The ***Krenzel*** Court concluded that because the officer "was statutorily obligated to inform [the defendant] of **her right to refuse chemical testing and the consequences arising therefrom** and failed to effectuate those precautions, [the defendant] did not make a knowing and conscious choice of whether to submit to the blood draw." *Id.* at 1032 (emphasis added).

In ***Gaston***, the police stopped the defendant's vehicle, the defendant failed field sobriety tests, and the defendant admitted to consuming both alcohol and marijuana. ***Gaston***, 239 A.3d at 138. The arresting officer testified "that, after the traffic stop, he transported [the defendant] to the police station where he asked [the defendant] to submit to a blood test, [the defendant] verbally agreed to a blood test, and then [the officer] read to [the defendant] the DL-26 Form verbatim." *Id.* (citations omitted). "[T]he suppression court [] found that [the defendant] consented to the blood test at the police station before [the officer] read [the defendant] the information on the Pennsylvania DL-26 Form." *Id.* (citation, emphasis, and footnote omitted); ***see also id.*** at 142 (noting "the suppression court in the instant

case concluded the officer read the DL-26 Form to [the defendant] after he had already consented to the blood draw.").

On appeal, the **Gaston** defendant argued that the trial court erred in denying his motion to suppress, because, among other reasons, under **Birchfield**, "his consent was coerced by the police officer's reading of the DL-26 Form."[8] **Id.** at 139. The **Gaston** Court affirmed the denial of Appellant's the motion to suppress for the same reasons. **Id.** at 140-42. Notably, the **Gaston** Court indicated that its analysis was limited to the defendant's challenge that his consent was coerced on the basis of **Birchfield** because the defendant limited his "motion to suppression of his blood test results on the basis of **Birchfield's** holding." **Id.** at 142 n.9. Appellant did not raise, and the **Gaston** Court did not address, whether the defendant's consent to the blood test upon request was voluntary under the totality of the circumstances. **Id.** (citing **Commonwealth v. Little**, 903 A.2d 1269, 1272-73 (Pa. Super. 2006)). The **Gaston** Court also did not cite **Gorbea-Lespier** or **Krenzel**.

Lastly, in **Gorbea-Lespier**, this Court considered the issue of whether a motorist's consent to a first blood draw after being given implied consent warnings extends to a second blood draw. **Gorbea-Lespier**, 66 A.3d at 384-

---

[8] The defendant filed a motion to suppress claiming that **Birchfield**, which the United States Supreme Court issued approximately one-and-a-half years after the defendant's arrest, "required suppression of the blood evidence[]" because "[t]he police obtained consent to the blood test after reading him the Pennsylvania DL-26 Form advising of enhanced criminal penalties for refusal and without a warrant." **Gaston**, 239 A.3d at 137 (citation and footnote omitted).

85. In that case, the defendant was involved in a two-vehicle accident. *Id.* at 384. The defendant was arrested for suspicion of DUI and transported to a nearby hospital. *Id.* On the way to the hospital, a state trooper advised the defendant of the implied consent warnings, and the defendant consented to a blood test. *Id.* About thirty minutes after the defendant's blood was drawn, a supervisor requested that the troopers obtain a second blood draw. *Id.* at 385. The trooper did not read the implied consent warnings to the defendant a second time before the second blood draw. *Id.*

The *Gorbea-Lespier* Court found that under the plain language of 75 Pa.C.S. § 1547(a), "a driver is deemed to give consent to one **or more** chemical tests of blood for the purpose of determining the alcoholic content of blood if the police officer has reasonable grounds to believe that person is under the influence of alcohol when operating his vehicle." *Id.* at 389 (emphasis in original). Therefore, this Court concluded that the defendant's consent to the first blood draw extended to the second blood draw, and there was no need for the police to inform the defendant of implied consent warnings a second time. *Id.* The *Gorbea-Lespier* Court further noted that under *O'Connell*, the police only have to inform a motorist of the consequences of refusing a breathalyzer test upon the motorist's refusal. *Id.* at 389-90.

Here, the trial court held that:

Because [Appellant] gave verbal consent immediately upon the request of the officer, there was no need to read the DL-26B Form. [*Gorbea-Lespier*, 66 A.3d at 389-90]. Additionally, because [Appellant] consented to the blood test, Officer Barnett's statements were not misleading and did not affect [Appellant's]

- 17 -

decision. ***Peppelman v. Commonwealth***, 403 A.2d 1041, 1042 (Pa. Cmwlth. Ct. 1979).

Officer Barnett and Officer Pasley did not have a general duty to inform [Appellant] of his right to refuse chemical testing of his blood. Police officers only have a duty to warn individuals of the consequences of their right to refuse, if they refuse the test. In [***O'Connell***], the Supreme Court of Pennsylvania held that police officers have a duty to inform citizens of the potential consequences of refusal. Following the decision by the Supreme Court of the United States in [***Birchfield***] the standards formed under ***O'Connell*** were modified slightly as to prevent defendants from facing both civil and criminal penalties as a result of refusing to consent to a chemical test of their blood. Later, in [***Gorbea-Lespier***], the Superior Court of Pennsylvania held that a defendant must only be informed of their right to refuse chemical testing and consequences of doing so **after** they have already attempted to refuse. ***Gorbea-Lespier***, 66 A.3d at 389-90.

\* \* \*

Here, Officer Barnett and Officer Pasley did not have a duty to inform [Appellant] of his right to refuse and the consequences of doing so because [Appellant] never refused testing. After being placed into custody, Officer Barnett requested that [Appellant] submit to a blood test. In response, [Appellant] verbally agreed to give blood. He did not become argumentative, confused, or even ask for his attorney; instead he continued to show the same level of compliance displayed throughout the entire encounter. While being transported to the hospital by Officer Pasley, [Appellant] made no statements that indicated he would withdrawal the consent given to Officer Barnett. At the hospital, [Appellant] remained compliant with the requests of Officer Pasley, and allowed the nurse to withdrawal blood without issue. [Appellant's] own testimony at the hearing for his Motion to Suppress offers no evidence suggesting that he otherwise tried to refuse. At no time, before, during, or after the drawing of [Appellant's] blood, did [Appellant] attempt to retract his consent and refuse a blood test. Because [Appellant] never refused or attempted to refuse a blood test, Officer Barnett and Officer Pasley never had a duty to inform him of his right to refuse and the consequences of doing so.

[Appellant] also argues that Officer Barnett's extemporaneous statements violated his right to informed consent, by leading

- 18 -

defendant to inaccurately believe that his license "could be" suspended, as opposed to the more precise and accurate term "would be." [Appellant] cites to case law showing that Pennsylvania courts have not only imposed a high standard of care on the warnings to be given to defendants in this situation, but even that the "could be" and "would be" difference argued here is in violation of this standard. Still, Officer Barnett's statements do not represent a violation of [Appellant's] right to informed consent, even if improper, because under *O'Connell* and its progeny, police only have a[] duty to inform a defendant of their rights to refuse after they have begun to refuse or become uncompliant.

Trial Ct. Op. at 4-7 (some citations and parentheticals omitted).

The trial court here also rejected Appellant's argument that his consent was not knowing, intelligent, and voluntary because Officer Barnett's implied consent warnings were defective, stating:

A review of the totality of the circumstances surrounding the arrest is required in order to determine whether or not a reasonable person would deduce that the [Appellant] granted voluntary consent to a blood test.

\* \* \*

[Appellant] was made aware of his right to refuse. Officer Barnett informed [Appellant] of his right to refuse as he was making his initial request to [Appellant] to submit to a blood test. [Appellant] testifie[d] that he was never told he could refuse testing. This court has already expressed that Officer Barnett's testimony is more credible. Additionally, [Appellant] argues in a separate issue, discussed, *supra*, that his consent was reliant on the Officer Barnett's use of the language "could" instead of "will" when informing him of his right to refuse. Therefore, it seems that [Appellant] does in fact recall Officer Barnett informing him of his right to refuse chemical testing.

- 19 -

*Id.* at 9-10 (citations omitted).  After analyzing the six voluntariness factors, the trial court concluded that Appellant's consent to the blood test was voluntary under the totality of the circumstances.  *Id.* at 10-12.

We initially acknowledge that the trial court concluded, and the Commonwealth argues on appeal, that the police only had a duty to inform Appellant of a right to refuse testing, but had no duty to inform Appellant of the consequences of a refusal unless he actually refused testing.  However, our Supreme Court's decision in *Myers* belies this position.  As our Supreme Court explained in *Myers*, when a police officer requests that an arrestee submit to a chemical test, the "officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision."  *See Myers*, 164 A.3d at 1171 (citing *O'Connell*, 555 A.2d at 877-78) (footnote omitted).  The *Myers* Court held that "[a]n arrestee is entitled to this information so that his choice to take a [chemical] test can be knowing and conscious."  *Id.*

Furthermore, applying *Myers*, the *Krenzel* Court held that a defendant cannot make a knowing and conscious choice of whether to submit to a blood draw when an officer does not inform the arrestee of his or her "right to refuse chemical testing and the consequences arising therefrom . . . ."  *See Krenzel*, 209 A.3d at 1032.  Accordingly, the *Myers* and *Krenzel* Courts have held that Section 1547 requires that police must inform an arrestee of the implied consent warnings as a threshold to valid consent to a blood test regardless of

whether an arrestee cooperated with the police up until that point and consented without hearing the warnings. *See id.* at 1031-32.

We note the trial court's and the Commonwealth's reliance on *Gorbea-Lespier* to assert that an arresting officer's duty to provide implied consent warnings is limited to instances when the arrestee actually refuses chemical testing. However, *Gorbea-Lespier* is distinguishable. As noted above, the issue in *Gorbea-Lespier* was whether the defendant's consent to a first blood test extended to a second blood test such that separate implied consent warnings before the second test was required. *See Gorbea-Lespier*, 66 A.3d at 385, 388. There was no dispute in that case that the defendant consented to the first blood test.[9] *See id.* at 387. Moreover, *Gorbea-Lespier* was decided before more recent interpretations of Section 1547(b)(2) by the Pennsylvania Supreme Court's decision in *Myers*, this Court's decision in *Krenzel*, as well as the United States Supreme Court decision in *Birchfield*.

Moreover, to the extent that the Commonwealth argues that *Gaston* supports its position that there is no need for an arresting officer to provide

---

[9] The *Gorbea-Lespier* Court additionally interpreted *O'Connell* as requiring that police only give a motorist implied consent warnings upon a refusal to submit to chemical testing. *See Gorbea-Lespier*, 66 A.3d at 389-90. As the *Gorbea-Lespier* Court had already determined the defendant's consent to the second blood test was voluntary under the plain language of Section 1547, the portion of the opinion holding that implied consent warnings only have to be given upon a refusal is *dicta*, because it was unnecessary to the resolution of the case. *See Commonwealth v. Borrin*, 80 A.3d 1219, 1224 n.10 (Pa. 2013) (explaining that any statement that is unnecessary to the court's resolution of a case is *dicta*); *see also In re L.J.*, 79 A.3d 1073, 1081 (Pa. 2013) (same).

implied consent warnings until a defendant refuses, the specific facts and arguments raised in *Gaston* are inapposite. *See Commonwealth v. Resto*, 179 A.3d 18, 22 (Pa. 2018) (plurality) (stating "the holding of a judicial decision is to be read against its facts." (citations omitted)). In *Gaston*, the defendant consented to the blood draw **before** the police officer read the implied consent warnings that informed the defendant of the enhanced criminal penalties if he refused. *See Gaston*, 239 A.3d at 138-39. Furthermore, *Gaston* involved a narrow determination of whether the defendant's consent to the blood test was coerced based upon the threat of additional criminal penalties if the defendant refused the blood test in violation of *Birchfield*. *See id.* at 140-42. Significantly, the *Gaston* Court noted that its analysis was limited to the defendant's challenge that his consent was coerced on the basis of *Birchfield* and that the voluntariness of defendant's consent, under the totality of the circumstances, was not at issue in that case. *See id.* at 142 n.9.

Here, by contrast, Appellant consented to the blood test **after** Officer Barnett verbally informed Appellant of his right to refuse and gave inaccurate implied consent warnings. *See* N.T. Suppress Hr'g at 19-20. Therefore, *Gaston* is not applicable. The issue in *Gaston*, namely, whether Appellant's consent was tainted or coerced by the *Birchfield*-offending DL-26 Form threatening enhanced criminal penalties in the event of refusal is not before us. Furthermore, unlike the defendant in *Gaston*, Appellant has preserved

and raised a challenge to the validity of his consent given after Officer Barnett provided inaccurate implied consent warnings.

Accordingly, we reject the Commonwealth's argument that the implied consent warnings only have to be given in the event of a refusal to consent to a breath or blood test. A motorist has a statutory right to refuse a blood test and the statute mandates that the police officer requesting the test must inform the motorist of his or her rights under the statute, regardless of whether the motorist is cooperative with or antagonistic towards the police. *See Myers*, 164 A.3d at 1170-71; *see also Krenzel*, 209 A.3d at 1031-32.[10] Therefore, as stated in *Myers* and *Krenzel*, warnings must be given when the police request that an arrestee submit to chemical testing of blood. *See Myers*, 164 A.3d at 1171; *see also* 75 Pa.C.S. § 1547(b)(2); *Krenzel*, 209 A.3d at 1031-32. Therefore, we are constrained to conclude that the trial

_____

[10] We note that nothing in Section 1547 or our case law requires the police to read the DL-26B Form verbatim to an arrestee when asking for that arrestee to submit to a chemical test of blood. This Court has held that other versions of the implied consent warnings are valid so long as they do not offend *Birchfield*. *See Commonwealth v. Geary*, 209 A.3d 439, 443 (Pa. Super. 2019) (finding the Philadelphia Police Department's blood testing consent form was facially valid). The present decision should be not be read as mandating that a specific form of the implied consent warnings be used. Rather our holding is that the police must follow the mandates of Section 1547 and our Supreme Court's decision in *Myers*, *i.e.*, the police must accurately inform an arrestee of the rights and consequences of refusal set forth in 75 Pa.C.S. § 1547(b)(2) when asking the arrestee to submit to a chemical test of breath or blood. *See Myers*, 164 A.3d at 1171 (stating, "the police officer must inform the arrestee of the consequences of refusal and notify the arrestee that there is no right to consult with an attorney before making a decision. The choice belongs to the arrestee, not the police officer." (citations and footnote omitted)).

court erred by holding that Officers Barnett and Pasley did not have a duty to inform Appellant the consequences of a refusal because Appellant did not actually refuse. **See** Trial Ct. Op. at 6.

We turn to whether Officers Barnett and Pasley complied with their duty to inform Appellant of his right under Section 1547 to refuse chemical testing and the consequences of refusal. While in **Krenzel**, the officer failed to inform the arrestee of her right to refuse the consequences of refusal, here, Officer Barnett provided Appellant with the officer's own version of the implied consent warnings. **Compare Krenzel**, 209 A.3d at 1031-32, **with** Trial Ct. Op. at 3. Therefore, we review the content of Officer Barnett's warnings to determine if they comply with Section 1547. Specifically, Officer Barnett informed Appellant that he did not have to submit to the blood test, and told Appellant that his refusal "**could**" lead to the suspension of his license for "**approximately** 12 months." N.T. Supp. Hr'g, 9/20/2018, at 17, 19 (emphases added). Officer Barnett did not inform Appellant that he did not have a right to consult with an attorney before making a decision. Officer Pasley, who transported Appellant to the hospital for the blood test, did not give Appellant the implied consent warnings. **Id.** at 50, 68. Therefore, Appellant was not informed of the actual consequences of refusal nor was he informed that he did not have a right to speak to an attorney regarding the blood test before making a decision. **See** 75 Pa.C.S. § 1547; **Myers**, 164 A.3d at 1171; **Krenzel**, 209 A.3d at 1030-31.

- 24 -

Due to the above-described incompleteness of the police warnings, we conclude that Officer Barnett did not comply with his statutorily mandated duty to inform Appellant of his right to refuse the blood test and the consequences of refusal. Officer Pasley also did not inform Appellant about his right to refuse and the consequences of refusal prior to the blood draw. Therefore, because Appellant was misinformed about his rights, we hold that he did not make a knowing and conscious choice of whether to submit to the blood draw.

For the foregoing reasons, we are constrained to conclude that the trial court erred in denying suppression. *See Bryant*, 67 A.3d at 724 (stating we may reverse only if the trial court's legal conclusions drawn from its factual findings are erroneous).

Judgment of sentence vacated. Order denying suppression motion reversed. Case remanded for a new trial. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge McCaffery joins and files a concurring statement.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/20