J-S18025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDITH RODRIGUEZ-CARDENAS | : | |
| | : | |
| Appellant | : | No. 1731 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002765-2021

BEFORE: PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 21, 2023**

Appellant, Edith Rodriguez-Cardenas, appeals from the March 29, 2022

Judgment of Sentence entered in the Bucks County Court of Common Pleas

following her conviction of two counts of Possession with Intent to Deliver

("PWID") and one count each of Possession of Marijuana, Use or Possession

of Drug Paraphernalia, Possession With Intent to Deliver Drug Paraphernalia,

Corrupt Organizations, and Conspiracy.[1]  Appellant challenges the denial of

her pre-trial motion to suppress evidence and the sufficiency of the

Commonwealth's evidence in support of her conviction of Corrupt

Organizations.  After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), (32), and (33); and 18 Pa.C.S § 911(b)(1) and
(b)(4), respectively.

The relevant facts and procedural history are as follows. On January 29, 2021, Appellant was the passenger in a white Jeep Wrangler driven by Christian Ochoa ("Ochoa").[2] At approximately 11:30 PM, Bedminster Township Police Officer James Zukow and Dublin Borough Police Officer Nicholas Swinehart were parked in separate patrol vehicles monitoring traffic on PA Route 313 exiting Dublin Borough into Bedminster Township, when they observed Ochoa's Jeep traveling westbound on Route 313. Officer Zukow began to follow Ochoa and Officer Swinehart followed Officer Zukow.[3] Officer Zukow observed the Jeep's speed repeatedly fluctuate from the posted speed limit of 55 MPH to approximately 40 MPH. Officer Zukow further observed the driver side tires of the Jeep pass onto or over the middle yellow lines of the road on several occasions. He also observed the passenger side tires pass over the white fog lines on several occasions, including when the Jeep encountered oncoming traffic.

After following the Jeep for approximately one to two miles, Officer Zukow activated his overhead lights and sirens and pulled Ochoa over for suspicion of driving under the influence. He exited his patrol vehicle and

---

[2] Ochoa would later become Appellant's co-defendant. His appeal of his judgment of sentence arising from this incident is currently before this panel at Docket Numbers 1216 and 1217 EDA 2022. While the relevant facts largely overlap, the appellants raise distinct issues on appeal. Accordingly, we address the appeals separately.

[3] Officer Zukow testified that, prior to deciding to follow Ochoa, he did not observe Ochoa violate the Motor Vehicle Code or operate the Jeep in a suspicious manner.

approached the passenger side of the Jeep. Officer Swinehart also stopped his vehicle, exited, and approached the driver's side of the Jeep.[4] Officer Swinehart requested Ochoa's driver's license; Ochoa complied and informed Officer Swinehart that he was traveling from Texas and had just picked up Appellant.[5] Officer Swinehart then gave Ochoa's driver's license to Officer Zukow, who maintained possession of it for the duration of the traffic stop.

Officer Zukow then approached Ochoa, who was still seated in the Jeep. Officer Zukow had difficulty hearing Ochoa because his speech was slow and almost slurred and observed that Ochoa's eyes appeared "droopy."[6] Officer Zukow suspected that Ochoa was impaired and, therefore, requested that Ochoa perform field sobriety tests. Ochoa was cooperative and passed two separate field sobriety tests. Officer Zukow informed Ochoa that he had passed the tests.

Officer Zukow then asked Ochoa if he had any illegal substances in the Jeep and Ochoa responded that he did not. Officer Zukow asked Ochoa for his consent to search the Jeep. Ochoa then consented, both orally and by

_____

[4] Officer Swinehart was wearing a body camera that he activated at the time he exited his patrol car. The suppression court played the video at a hearing held in connection with Appellant's and Ochoa's motions to suppress evidence.

[5] Ochoa possessed a driver's license issued by Texas. The Jeep, which Ochoa had rented, had a Kentucky license plate.

[6] N.T. Suppression Hr'g, 11/9/21, at 25.

- 3 -

signing a "Consent to Search" form.[7]   Ochoa did not ask Officer Zukow any questions about the Consent to Search form or indicate at any time that he did not understand what was going on.   Officer Swinehart witnessed Ochoa's consenting to the search.[8]   Neither Officer Zukow nor Officer Swinehart requested Appellant's consent to search the vehicle.

After Ochoa consented to the search, Officer Zukow approached Appellant, who was still seated in the front passenger seat of the Jeep and advised her that he was going to search the Jeep.[9]   Appellant confirmed to Officer Zukow that she understood that he was going to conduct a search by saying "okay"[10] and stepped out of the Jeep.   Appellant asked Officer Zukow if she could take her purse with her and Officer Zukow answered "whatever."[11]

_____

[7] Approximately 13 minutes passed between the time Officer Zukow pulled the Jeep over and when Ochoa signed the consent to search form.

[8] The court admitted the "Consent to Search" form into evidence as Exhibit CS-1.   The form, identified as "Bedminster Township Search and Seizure Consent Form," contains language indicating that the signatory had been informed of his constitutional right to refuse a search of the property and to refuse to consent to a search.   The Consent to Search form also advises the signatory that he may terminate the search at any time.

[9] At some point, Appellant produced her California-issued driver's license for the officers.

[10] N.T. Suppression Hr'g at 136.

[11] *Id.* at 97.   At the beginning of the stop, officers observed Appellant's purse by her feet on the floor of the passenger side of the front of the Jeep.   During the stop, Appellant moved it to the center console.   *Id.* at 143-44.   Officer Zukow testified that, based on the bag's initial location, it was "possib[le]" that Ochoa had access to it.   *Id.* at 146.   Ultimately, during the search of the Jeep, the officers found it on the front passenger seat.

Appellant chose to leave her purse in the Jeep. Officer Zukow told Appellant and Ochoa that they were not under arrest.

Because it was a very cold night,[12] Officer Zukow offered Appellant and Ochoa the opportunity to wait in Officer Swinehart's patrol vehicle during the search, and Appellant and Ochoa accepted. The officers did not notify Appellant that she was free to leave.

Officer Swinehart escorted Appellant and Ochoa to his patrol car and patted them down for weapons before they entered the back seat of the car. Officer Swinehart remained just outside the vehicle in case Appellant or Ochoa decided to object to the search, had any questions, or needed anything. The back doors of Officer Swinehart's vehicle were locked while Appellant and Ochoa sat in the back seat because they lock automatically. Officers retained Ochoa's driver's license for the duration of the traffic stop.

Appellant and Ochoa remained in Officer Swinehart's vehicle for approximately 30 minutes, with the windows closed, while Officer Zukow and other officers who had arrived on the scene, searched the Jeep. During the search the officers discovered suspected controlled substances. Specifically, they discovered Appellant's purse on the front passenger seat containing marijuana and a written list of expenses; a backpack in the back seat containing 7,724 grams of Fentanyl, 983 grams of heroin, and 1001 grams of cocaine; a second backpack containing 25.96 grams of methamphetamine and

---

[12] Officer Zukow indicated that it was approximately 18 degrees during the traffic stop. *Id.* at 96.

66 Alprazolam pills; a digital scale, $9,698 cash; four phones; and large hardtop red suitcase with Greyhound bus tags on it.

Following the search, Officer Zukow arrested Appellant and Ochoa and the Commonwealth charged them with numerous drug offenses. The police subsequently obtained search warrants for and executed searches of cell phones belonging to Ochoa and Appellant. Evidence obtained from the search of Appellant's cell phone indicated that she was involved with a drug trafficking organization.

On September 30, 2021, Appellant filed a motion to suppress the evidence seized following the search of the Jeep. Appellant alleged that the police lacked reasonable suspicion or probable cause to stop the Jeep in the first instance, and that, therefore, any detention, search, and seizure of physical evidence were tainted by the illegality of the initial stop.[13]

On November 9, 2021, the trial court held a hearing on Appellant's motion to suppress at which Officers Zukow and Swinehart provided testimony consistent with the above facts.[14]

On January 24, 2022, the trial court denied Appellant's motion to suppress.

_____

[13] **Id.** at 7. Appellant also asserted that the warrant authorizing the search of her cell phone failed to articulate probable cause to search within its "four corners" and, thus, sought suppression of any evidence obtained from the search of her phone.

[14] Because the Commonwealth had filed a motion to consolidate consideration of Appellant's motion with consideration of the separate motion to suppress filed by Ochoa, the court heard evidence pertaining to both.

On March 29, 2022, Appellant waived her right to a jury trial and proceeded to a stipulated waiver trial. Relevant to Appellant's challenge to the sufficiency of the evidence in support of her Corrupt Organizations conviction, the stipulated facts were as follows:

> An investigation by [officers] revealed the following: [Appellant] traveled from her home in Compton[,] California to New York on January 14th of 2021 at the direction of an individual identified as Gigi [] in her phone. [Appellant] was instructed to book air travel for several individuals over the course of several days, two of which were headed to Culiacan [], Mexico, the capital of Sinaloa. Gigi instructed [Appellant] to purchase digital scales, travel to Niagara Falls, New York to pick up and drop off money, to purchase large suitcases and to travel to New York City.

> While in New York City, [Appellant] received instructions from Gigi that the man she was to meet there would show her a dollar bill containing a specific serial number for identification purposes. The man, only, identified as Michael, communicated with [Appellant] via WhatsApp to arrange transfer of money. During this conversation both Michael and [Appellant] identified Gigi as her boss. During her travels[, Appellant] informed Gigi that she was keeping a list of her expenses. This list was later found in the purse, the Louis Vuitton purse, during the traffic stop on January 29th of 2021. On January 28th of 2021, Gigi instructed [Appellant] to travel to Philadelphia to meet with Gigi's quote, friend, unquote, later identified as her co-defendant, Christian Ochoa.

> [Appellant] and Ochoa communicated via text message on WhatsApp to arrange for her pickup from the Sleep Inn located on Cherry Street in Philadelphia. Ochoa and [Appellant] were then stopped by Officer Zukow before they were able to return to Mr. Ochoa's truck in Allentown.

N.T. Trial, 3/29/22, at 10-13.

Following its consideration of the evidence, the court convicted Appellant of the above charges. That same day, the trial court sentenced Appellant to an aggregate term of 8 to 16 years of incarceration. Appellant

filed a post-sentence motion challenging the sufficiency of the evidence in support of each of her convictions. After holding a hearing, on May 26, 2022, the trial court denied Appellant's post-sentence motion.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Was [Appellant] free to leave after the initial stop for a traffic violation?

2. Was the evidence insufficient to sustain a verdict of guilty beyond a reasonable doubt for the Corrupt Organizations charge here?

Appellant's Brief at 2.

## A.

In her first issue, Appellant asserts that the suppression court erred in denying her motion to suppress, asserting that the police search of her purse was illegal because the police illegally prolonged the traffic stop. *Id.* at 8-12.

Before we reach the merits of this issue, we must consider whether Appellant has preserved it for our review. It is axiomatic that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Additionally, an appellant may not raise an issue for the first time in a Rule 1925(b) Statement. *Commonwealth v. Tejada*, 107 A.3d 788, 799 (Pa. Super. 2015).

Although Appellant raised this specific claim in her Rule 1925(b) statement, our review of the motion to suppress and the Notes of Testimony

from the suppression hearing indicates that Appellant did not claim and argue that the court should exclude the seized evidence because the police illegally prolonged the traffic stop.[15]  It is well-settled that appellate review of a suppression order "is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." **Commonwealth v. Moser**, 188 A.3d 478, 483-84 (Pa. Super. 2018) (citation omitted); **see also Commonwealth v. Thur**, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression.").  Accordingly, this issue is waived.[16]

Appellant also claims that the "trial court's reliance on third-party consent should fail and not be affirmed here" because the record does not support a finding that Ochoa had authority to consent to a search of Appellant's property.  Appellant's Brief at 11.  Appellant did not, however,

---

[15] Appellant argued instead that the police lacked probable cause to initiate the traffic stop in the first instance, N.T. Suppression Hr'g at 235-42, the police lacked Appellant's consent to search the vehicle and that Ochoa lacked authority to consent to a search of Appellant's purse, *id* at 242-43, and her voluntary entrance into Officer Swinehart's vehicle during the search was, in fact, an illegal detention, *id*. at 243-44.  The Commonwealth made a singular reference to a "prolonged stop" when it stated "Mr. Ochoa voluntarily gave consent [to the search,] I would submit [] that is what prolonged the traffic stop, not anything that Officer Zukow did." **Id.** at 280.

[16] We also observe that Appellant did not direct this Court in the Argument section of her Brief to the place in the record where she preserved this issue for our review in violation of Pa.R.A.P. 2119(c), (e).

include this specific issue in her brief's Statement of Questions Involved and it is not fairly suggested thereby. This issue is, thus, waived. Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").[17]

**B.**

In her second issue, Appellant challenges the sufficiency of the evidence underlying her conviction of Corrupt Organizations. Appellant's Brief at 12-15. In particular, she argues that the Commonwealth failed to prove the "course of conduct" element of the Corrupt Organizations offense because it did not present evidence of two or more acts of racketeering. *Id.* at 14-15. She contends that the evidence was only sufficient to establish one act as she was found with the drugs in question at one time, from one vehicle, on one day. *Id.*

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "Our standard of review is de novo, and our scope of review is plenary." *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019). When reviewing sufficiency challenges, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the Commonwealth the

---

[17] However, even if it were not waived, Appellant would not be entitled to relief on this claim. The record supports the suppression court's determination that the police reasonably concluded that Ochoa had the authority to consent to the search based on their interactions with Ochoa and, separately, with Appellant. *See* Trial Ct. Op., 11/14, 22, at 21-22.

benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014).

This Court will not disturb a verdict if the evidence produced at trial is "sufficient to establish all elements of the offense beyond a reasonable doubt." *Id.* (citation omitted). "[A] conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017). "[T]he appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

A person is guilty of violating 18 Pa.C.S. § 911(b)(1) if, in relevant part, that person "... received any income derived, directly or indirectly, from a pattern of racketeering activity in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise. . . ."

Pursuant to 18 Pa.C.S. § 911(h)(1)(ii), offenses arising under the Controlled Substance, Drug, Device and Cosmetic Act (35 Pa.C.S. § 780-113) are considered "racketeering activity." Dealing in the Proceeds of Unlawful Activities is also considered a "racketeering activity." 18 Pa.C.S. § 911(h)(1)(i) (referencing 18 Pa.C.S. § 5111).

A "'[p]attern of racketeering activity' refers to a course of conduct requiring two or more acts of racketeering activity..." 18 Pa.C.S. § 911(h)(4).

In addition, our Crimes Code defines an "enterprise" as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities." 18 Pa.C.S. § 911(h)(3).

To convict a defendant of the Corrupt Organizations offense, the Commonwealth must prove that the defendant was "engaged in a pattern of racketeering activity whose profits benefitted an enterprise with which she was connected." *Commonwealth v. Dellisanti*, 876 A.2d 366, 370 (Pa. 2005).

Here, based on the stipulated facts set forth above, the trial court convicted Appellant of two counts of PWID—one as to Fentanyl and heroin and the other as to cocaine. In addition, the stipulated evidence also established that, *inter alia*, Appellant, along with Ochoa, Gigi, "Michael," and other unnamed individuals, was part of an illegal enterprise. The evidence demonstrated that Gigi was Appellant's boss and directed Appellant to travel from California to New York City, Niagara Falls, and Philadelphia. Gigi also directed Appellant's interactions with others in the group and instructed Appellant to purchase digital scales and airfare for several individuals. Gigi further instructed Appellant to pick up and drop off money and to purchase large suitcases. The evidence showed that, at Gigi's direction, Appellant traveled to New York City where she met with "Michael" to exchange money and then connected with Ochoa to move money and drugs to further the

group's illegal drug activity. Both Appellant and "Michael" identified Gigi as her boss. Additional evidence demonstrated that, during her travels, Appellant informed Gigi that she was keeping a list of expenses associated with her trip to New York and Pennsylvania to give to Gigi upon Appellant's return, and police recovered this list in Appellant's purse when they searched it. N.T. Trial at 10-13.

Following our review, we conclude the Commonwealth presented sufficient evidence from which it was reasonable for the trial court, sitting as fact-finder, conclude that Appellant violated Section 911(b)(1) based upon the court's finding that Appellant had participated in two or more acts of racketeering. In addition to presenting evidence sufficient to convict Appellant of PWID—convictions she does not challenge on appeal—the Commonwealth demonstrated that Appellant engaged in various activities benefitting, and in furtherance of a, criminal enterprise involving Appellant, Gigi, Ochoa, and "Michael."' Appellant is, thus, not entitled to relief on this claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2023

- 13 -